IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MAKANEOLE,

    Plaintiff,

                            3:14-CV-1528-PK

v.                                FINDINGS AND
                                RECOMMENDATION

SOLARWORLD INDUSTRIES AMERICA,
INC., SOLARWORLD INDUSTRIES
AMERICA, LP, SOLARWORLD INDUSTRIES
SERVICES, LLC, SOLARWORLD POWER
PROJECTS, INC., RANDSTAD US, LP, and
KELLY SERVICES, INC.,

        Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Michael Makaneole brought this putative class action against defendants

Solarworld Industries America, Inc., SolarWorld Industries America, LP, SolarWorld Industries

Services, LLC, SolarWorld Power Projects, Inc. (collectively with Solarworld Industries

America, Inc., SolarWorld Industries America, LP, and SolarWorld Industries Services, LLC,

"SolarWorld" or the "SolarWorld defendants"), Randstad US, LP ("Randstad")[1], and Kelly

---

[1] Makaneole inaccurately identified Randstad as "Randstad Professionals US, LP" in his
complaint as originally filed, and notwithstanding that Randstad has noted the error in virtually

Services, Inc. ("Kelly" or "KSI"), in the Multnomah County Circuit Court on August 26, 2014.

Defendant Randstad removed Makaneole's action to this court effective September 24, 2014.

Subsequent to removal, Makaneole amended his complaint in this court effective April 6, 2015.

By and through his amended complaint, Makaneole alleges that the SolarWorld

defendants are in the business of manufacturing and selling photovoltaic products, and that

defendants Kelly and Randstad are both in the business of providing temporary workers to

employers in need of short-term staff. Makaneole alleges that he was employed first by Kelly,

then by Randstad, and then by SolarWorld, and at all material times while serially employed by

the three employers performed services on behalf of SolarWorld at a SolarWorld facility in

Oregon. It is Makaneole's position that during all three successive periods of employment,

SolarWorld engaged in a practice of programming an electronic time-keeping system to deduct

minutes from his hours worked prior to reporting them to payroll for purposes of computing his

compensation, and that Kelly and Randstad used the hours reported to them by SolarWorld

following such deduction in calculating his compensation during the periods when he worked for

those employers; it is further Makaneole's position that each of the three employers treated all of

their similarly situated employees' hours worked in the same fashion during approximately the

same time period. Arising out of that practice, Makaneole alleges all defendants' liability for

violation of Oregon's Or. Rev. Stat. 652.120 and 653.010 by failing to pay all wages owed, for

violation of Oregon's Or. Rev. Stat. 652.120 and 653.010 by failing to pay overtime wages owed,

and for violation of Oregon's Or. Rev. Stat. 652.140 by failing to pay all wages owed at the

---

every document it has since filed with the court, Makaneole continues to so misidentify Randstad
in his current pleading.

Page 2 - FINDINGS AND RECOMMENDATION

termination of employment.  In connection with his claims, Makaneole seeks damages for unpaid wages in an unspecified amount, as well as award of his attorney fees and costs.  This court has original federal subject-matter jurisdiction over Makaneole's putative class action pursuant to 28 U.S.C. § 1332(d)(2).

Now before the court are Makaneole's motion (#79) to compel production of documents, Makaneole's motion (#81) to compel interrogatory responses, SolarWorld's motion (#82) for summary judgment, Kelly's motion (#84) for summary judgment, Randstad's motion (#86) for summary judgment, Kelly's request (#119) for judicial notice and Randstad's identical request (#122) for judicial notice.  I have considered the motions, oral argument on behalf of the parties, and all of the pleadings and papers on file.  For the reasons set forth below, Makaneole's motion (#79) to compel production of documents and motion (#81) to compel interrogatory responses should each be granted in part and denied in part as discussed below, SolarWorld's motion (#82) for summary judgment should be denied, Kelly's motion (#84) for summary judgment should be granted in part and denied in part as discussed below, Randstad's motion (#86) for summary judgment should be granted in part and denied in part as discussed below, Kelly's request (#119) for judicial notice and Randstad's request (#122) judicial notice should each be granted, summary judgment should be granted in Randstad's favor as to Makaneole's Section 652.120 claim against it for failure to pay overtime wages owed, and summary judgment should be granted in Kelly's favor as to all of Makaneole's claims against it.

### LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed"

must support that position either by citation to specific evidence of record "including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials," by showing that the evidence of record does not establish either the presence or

absence of such a dispute, or by showing that an opposing party is unable to produce sufficient

admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c).

The substantive law governing a claim or defense determines whether a fact is material. *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g.*,

*Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116

S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the

United States must draw all reasonable inferences in favor of the nonmoving party, and may

neither make credibility determinations nor perform any weighing of the evidence. *See, e.g.*,

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 150 (2000).

## II.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense – including the

existence, description, nature, custody, condition, and location of any documents or other

tangible things and the identity and location of persons who know of any discoverable matter."

Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence." *Id.* However, the district courts should limit the scope of discovery under specified

circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery
> otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
>> obtained from some other source that is more convenient, less burdensome, or less
>> expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the
>> information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
>> considering the needs of the case, the amount in controversy, the parties'
>> resources, the importance of the issues at stake in the action, and the importance
>> of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## III.    Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding

any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is

to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead

to other matters that would bear on, any issue that is or may be in the case. *See, e.g.,*

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party

bears the burden of establishing that the discovery is overly broad, unduly burdensome or not

relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000).

"Boilerplate, generalized objections are inadequate and tantamount to not making any objection

at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal.

1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an

order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;
>
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33, or
>
> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B).  Moreover, Rule 37(a)(4) provides that "an evasive or incomplete

disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.

R. Civ. P. 37(a)(4).  Rule 26 provides that "[f]or good cause, the court may order discovery of

any matter relevant to the subject matter involved in the action."  Fed. R. Civ. Pro. 26(b)(1).

IV.     **Fees**

Federal Civil Procedure Rule 37(a)(5) provides that a party prevailing on a motion to

compel discovery is entitled to award of attorney fees incurred in bringing the motion, absent

special circumstances:

> If [a] motion [to compel] is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But

the court must not order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

> (iii) other circumstances make an award of expenses unjust.

. . .If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed .R. Civ. P. 37(a)(5)(A), (B).

## JUDICIAL NOTICE

Kelly and Randstad each formally request that the court take judicial notice of portions of the legislative history of Or. Rev. Stat. § 652.360, SolarWorld implicitly requests that the court take judicial notice of those same portions of the legislative history, and Makaneole informally requests that the court take judicial notice of an additional portion of the same legislative history. I agree with the parties that the legislative history of Section 652.360 is fit for judicial notice. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n. 1 (9th Cir. 2012), *citing Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005); *see also* Or. Rev. Stat. § 174.020(1)(b) (providing that "[t]o assist a court in its construction of a statute, a party may offer the legislative history of the statute"). Accordingly, Kelly's request (#119) for judicial notice and Randstad's request (#122) for judicial notice should each be granted, as should SolarWorld's tacit request and Makaneole's informal request.

Section 652.360, as will be discussed in greater detail below, currently provides as follows:

 (1) An employer may not by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by [Oregon's wage-and-hour statutes] or any statute relating to the payment of wages, except insofar as the Commissioner of the Bureau of Labor and Industries in writing approves a special contract or other arrangement between the employer and one or more of the employer's employees. The commissioner may not give approval unless the commissioner finds that such contract or arrangement will not prejudicially affect the interest of the public or of the employees involved, and the commissioner may at any time retract such approval, first giving the employer not less than 30 days' notice in writing.

 (2) A settlement between an employer and an employee of a known and identified claim arising under [Oregon's wage-and-hour statutes] or any statute relating to the payment of wages does not require the commissioner's approval if the settlement does not provide for the employee to relinquish a claim for additional or future violations.

Or. Rev. Stat. § 652.360. The documents within the scope of the parties' requests for judicial notice tend to establish that, in connection with the proposal to add Subsection 652.360(2) to the statute in the course of the 2001 session of the Oregon legislature, Oregon Bureau of Labor and Industries ("BOLI") Commissioner Jack Roberts submitted a statement to the House Committee on Business, Labor, and Consumer Affairs (the "House committee") describing BOLI's position as follows:

 ORS 652.360 currently prohibits an employer and employee from entering into a contract that would exempt the employer from liability or penalty relating to wage payments, except with the prior approval of the Labor Commissioner.

 There is a new concern (in *Frances Vento v. Versatile Logic Systems Corp.*, Oregon Court of Appeals, CA A103546, 5/17 /00) that a wage claim settlement between an employer and employee may be considered such a contract, and that all wage claim settlements would therefore require approval by the commissioner.

> BOLI has not previously approved such settlements and, if we begin doing so, we can expect to be asked to approve a substantial number of settlements in the future, which we are currently not prepared to do. **The language in [the proposed amendment to add Subsection 652.360(2) to the statute] remedies the situation by specifying that wage claim settlements do not require the commissioner's approval unless the settlement would have the employee relinquish a claim on additional or future violations.**

Submission of BOLI Commissioner Jack Roberts, February 20, 2001, House Committee on Business, Labor, and Consumer Affairs (emphasis supplied). The subject documents further establish that the House committee subsequently issued a summary which characterized the purpose of the amendment as "[to] [r]elieve[] Commissioner of Labor of responsibility for approving wage payment settlements if the settlements do not require the employee to relinquish claims for additional or future violations" and as "specifying that most such settlements do not require the Commissioner's approval." House Committee on Business, Labor, and Consumer Affairs, Staff Measure Summary of HB 2220, 71st Oregon Legislative Assembly.

The subject documents further tend to establish that, after the measure to implement the proposed amendment passed the Oregon House of Representatives, Commissioner Roberts provided oral testimony to the Senate Committee on Business, Labor, and Economic Development (the "Senate committee"), as follows:

> And, [the proposed amendment] simply says that **w[h]ere there is a known and identified claim – not a blanket waiver of claims – where there's a known and identified claim . . . that [BOLI] do[es]n't have to . . . approve that provided [the settlement agreement] only settles the known, identified claim and doesn't p[urport] to settle any additional or future violations.**
>
> This, we think, makes it easier for the parties to settle their own private claims and doesn't involve us, which we're not staffed for and don't want to be involved in going in and investigating all those – by the same token it leaves in place the protections that workers should have either for prospective waivers of rights or for broader issues that are beyond what they may know at the time they're being asked

Page 9 - FINDINGS AND RECOMMENDATION

or coerced into a settlement.

This passed unanimously on the House side.

Declaration (#112) of Stephanie J. Brown, Exh. 1 (Declaration of Greg Wasson) (emphasis supplied).

Finally, the subject documents further tend to establish that the Senate committee issued a summary of the proposed amendment in very similar vein to the summary issued by the House committee, characterizing the purpose of the proposed amendment as "[to] [r]elieve[] Commissioner of Labor of responsibility for approving wage payment settlements unless the settlement requires the employee to relinquish claims for additional or future violations" and as "specifying that most, i.e., those that don't require the employee to give up rights to file future claims, such settlements do not require the Commissioner's approval." Senate Committee on Business, Labor, and Economic Development, Staff Measure Summary of HB 2220, 71st Oregon Legislative Assembly.

## FACTUAL BACKGROUND

### I.   The Parties

Defendant Solarworld Industries America, Inc., is an Oregon corporation with its principal place of business in Hillsboro, Oregon. Defendant SolarWorld Industries America, LP, is a limited partnership organized under the laws of the State of Delaware with its principal place of business in Bonn, Germany. Defendant SolarWorld Industries Services, LLC, is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Hillsboro, Oregon. Defendant SolarWorld Power Projects, Inc., appears to have ceased to exist following an October 2012 merger with a sister company (SolarWorld Americas,

LLC, a liability company organized under the laws of the State of California with its principal

place of business in Hillsboro, Oregon), and appears formerly to have been a California

corporation with its principal place of business in Camarillo, California. The Solarworld

defendants are collectively in the business of manufacturing and marketing photovoltaic

products, and appear to operate as U.S. subsidiaries of SolarWorld AG, a German

Aktiengesellschaft with its principal place of business in Bonn, Germany.

Defendant Kelly is a Delaware corporation with its principal place of business in Troy,

Michigan. Kelly is in the business of providing temporary employees to employers in need of

short-term staff.

Defendant Randstad is a limited partnership organized under the laws of the State of

Delaware with its principal place of business in Woburn, Massachusetts. Randstad is likewise in

the business of providing temporary employees to employers in need of short-term staff.

Plaintiff Makaneole is a former employee of defendants Kelly, Randstad, and one or more

of the SolarWorld defendants. Whether employed directly by Kelly, by Randstad, or one or more

of the SolarWorld defendants, at all material times Makaneole provided services to the

SolarWorld defendants at a SolarWorld facility in Oregon.

## II.    History Underlying the Parties' Dispute[2]

Makaneole first applied for an employment position with Kelly on February 21, 2011.

*See* Deposition of Michael Makaneole ("Makaneole Depo."), 82:16-22. The Employment

Application document that Makaneole filled out on February 21, 2011, was a pre-printed form

---

[2] Except where otherwise indicated, the following recitation constitutes my construal of
the evidentiary record in light of the legal standard governing motions for summary judgment
under Federal Civil Procedure Rule 56.

prepared by Kelly that included a section appearing under the heading "Agreement" in which

numerous provisions purporting to govern both the application and the terms and conditions of

the contemplated employment relationship were set forth in small print. *See id.*, Exh. 5 (the

"Employment Application").  Among the provisions of the Employment Application document

was one appearing under the sub-heading "Limitations on Actions," providing as follows:

> I agree to bring any claims I may have against [Kelly] within 300 days of the day
> that I knew, or should have known, of the facts giving rise to the cause of action
> and waive any longer, but not shorter, statutory or other limitations periods.  This
> includes, but is not limited to, the initial filing of a charge with the Equal
> Employment Opportunity Commission and/or state equivalent civil rights agency.
> However, I understand that I will thereafter have the right to pursue any federal
> claim in the manner prescribed in any right to sue letter that is issued by an
> agency.

Employment Application at 2.  Under the sub-heading "Successors and Assigns and Entire

Application" the Employment Application additionally contained a provision that Makaneole

would "pay any and all legal fees, including, without limitation, all reasonable attorneys' fees,

court costs, and any other related fees and/or costs incurred by Kelly in enforcing the provisions

of th[e Employment Application]."[3]  Makaneole signed the Kelly Employment Agreement before

submitting it to Kelly.  *See id.*  Makaneole testifies that he read the contract and understood its

terms before signing it.  *See* Makaneole Depo., 85:20-25.

　　　Kelly accepted Makaneole's application, and Makaneole began working for Kelly on

---

[3]  The Employment Application also contained a provision specifying that its terms were
to be interpreted according to Michigan law, and that any action arising out of the employment
relationship contemplated therein must be brought in a Michigan court.  *See* Employment
Application at 2.  However, the parties all appear to agree that, notwithstanding the choice of law
and choice of forum provisions of the agreement, because the agreement contemplated the
employment of an Oregon resident in Oregon for the purpose of providing employment services
in Oregon, Oregon law nevertheless governs Makaneole's claims and an Oregon forum is
nevertheless appropriate.  *See* Or. Rev. Stat. § 81.105(3).  I concur with the parties on this point.

Page 12 - FINDINGS AND RECOMMENDATION

April 11, 2011. *See id.*, 91:15-21. Kelly assigned Makaneole to perform services on behalf of SolarWorld, and SolarWorld assigned Makaneole the position of Maintenance Technician I in its wafering department. *See id.*, 115:2-12. During the tenure of his employment by Kelly, Makaneole used SolarWorld's timeclocks to record his hours for compensation purposes and did not independently report his hours worked to Kelly, but rather relied on SolarWorld to notify Kelly of his hours worked. *See id.*, 123:17 – 125:14. Makaneole did not at any material time know whether Kelly had actual knowledge of the timekeeping practices complained of in Makaneole's complaint. *See id.* However, Makaneole himself was aware of the complained-of timekeeping practices from very close to the beginning of his assignment to SolarWorld, and he remained aware of the fact that those practices were impacting his compensation throughout the tenure of his employment with all three employers. *See id.*, 37:5 – 39:17, 42:13-23. In every week during the tenure of his employment by Kelly, Makaneole worked a sufficient number of hours to be entitled to overtime compensation for at least some of his time worked. *See id.*, 130:10 – 133:18.

Makaneole's employment with Kelly ended effective December 12, 2011, when SolarWorld began relying on Randstad rather than Kelly for provision of temporary employees and all of Kelly's employees assigned to provide services to SolarWorld were laid off by Kelly and hired by Randstad. *See id.*, 91:22-24, 92:24 – 93:10, 107:3-10, 109:4-5, 111:3-6. Following the transfer of Kelly's employees assigned to SolarWorld to Randstad, Makaeole worked for Randstad from December 12, 2011, through February 21, 2012. *See id.*, 107:3-10, 107:17 – 109:21, 111:3-11. While employed by Randstad, Makaneole continued to provide services to SolarWorld in the capacity of a Maintenance Technician I in SolarWorld's wafering department.

Page 13 - FINDINGS AND RECOMMENDATION

*See id.*, 119:7-17. In every week during the tenure of his employment by Randstad, Makaneole

worked a sufficient number of hours to be entitled to overtime compensation for at least some of

his time worked. *See id.*, 199:24 – 201:22.

Effective February 21, 2012, Makaneole ceased to be employed by Randstad, and began

working directly for SolarWorld. *See id.*, 109:22 – 110:2, 111:7-11, 112:24 – 113:2. Following

the end of his employment by Randstad, Makaneole continued to serve SolarWorld as a

Maintenance Technician I. *See id.*, 119:7-17. Makaneole never provided employment services

to SolarWorld in any different capacity. *See id.*, 119:21-23.

It is Makaneole's position and allegation that at all material times the SolarWorld

defendants programmed SolarWorld's electronic timekeeping system to deduct 0-5 minutes from

the beginning of each hourly employee's shift, 0-5 minutes from the end of each such employee's

shift, and 0-29 minutes from each such employee's lunch break, recording the actual hours

worked but reporting the time worked as modified following such deductions for compensation

purposes. *See* Amended Complaint, ¶¶ 73-85. Makaneole additionally takes the position that the

SolarWorld defendants would from time to time require hourly employees to take a shorter lunch

break than the thirty minute break required by Oregon statute. *See id.*, ¶ 85. Makaneole takes the

further position that the SolarWorld defendants engaged in this practice without regard to

whether some or all of the hours worked during a given shift were overtime hours, such that

some of the time the deducted minutes should have been compensated at an overtime rate and not

merely at a straight-time rate. *See id.*, ¶¶ 104-105. Makaneole takes the further position that the

SolarWorld defendants' hourly employees never received compensation for the deducted

minutes, including, as to employees (like Makaneole) whose employment terminated prior to the

filing of this action, in connection with the termination of their employment. *See id.*, ¶ 125.

SolarWorld laid Makaneole off effective January 23, 2013, the same day that it notified

him of the lay-off. *See* Makaneole Depo., 113:3-8, 189:1 – 192:1. In connection with the

termination of his employment, SolarWorld presented Makaneole with a Separation and Release

Agreement which provided that, in consideration for Makaneole's execution thereof, SolarWorld

would pay Makaneole separation pay in the amount of $1,225.14, as well as other benefits, to

which amount and benefits he would not otherwise have been entitled. *See id.*, 192:24 – 193:13.

Makaneole was given a brief opportunity to review the Separation and Release Agreement, and

was advised that he was under no obligation to sign it, but that he would not receive the

separation pay or other benefits provided thereunder if he did not. *See id.*, 194:4 – 195:14. The

Separation and Release Agreement contained a provision under the heading "General Release"

that provided in relevant part as follows:

> [Makaneole] acknowledges that [he] would not be entitled to receive the
> Separation Pay provided for herein absent [his] execution of and compliance with
> this Agreement. In consideration of the Separation Pay, **[Makaneole]**,
> individually and on behalf of [his] spouse, heirs and assigns, to the fullest extent
> permitted under applicable law, **unconditionally releases and discharges**
> **SolarWorld**, its affiliates, subsidiaries, and related corporations and each entity's
> respective owners, directors, officers, shareholders, employees, agents,
> contractors, successors and assigns, **from any and all known or unknown**
> **liability, damages claims, causes of action or suits of any type, including**
> **claims under any common law theories,** including but not limited to, breach of
> contract or tort or tort-like theories and under any state or federal, constitutional,
> civil rights, labor, and employment laws, including but not limited to, Employee
> Retirement Income Security Act (ERISA), Title VII of the Civil Rights Act of
> 1964, the Post Civil War Civil Rights Acts (42 USC §§ 1981-1988), the Civil
> Rights Act of 1991, the Equal Pay Act, Older Workers' Benefit Protection Act, the
> Age Discrimination in Employment Act, the Americans with Disabilities Act, the
> Worker Adjustment and Retraining Notification Act, the Rehabilitation Act of
> 1973, the Uniformed Services Employment and Reemployment Rights Act, the
> Fair Labor Standards Act, Executive Order 11246, and the Family and Medical

Leave Act, all as amended, including any regulations or guidelines thereunder. *Id.*, Exh. 16 ("Separation and Release Agreement"), ¶ 5 (emphasis supplied). Makaneole executed the Separation and Release Agreement and received the separation pay provided for thereunder. *See* Makaneole Depo., 195:9-14.

Makaneole filed this action in Multnomah County Circuit Court on August 26, 2014.

## III.    The Parties' Discovery Dispute

In the course of discovery in connection with this action, Makaneole issued to each defendant or set of defendants two sets of requests for production of documents and a set of interrogatory requests. SolarWorld responded to Makaneole's first set of requests for production on January 8, 2015, to Makaneole's second set of requests for production on June 25, 2015, and to Makaneole's interrogatory requests on September 28, 2015. Kelly responded to Makaneole's first set of requests for production on January 8, 2015, to Makaneole's second set of requests for production on June 24, 2015, and to Makaneole's interrogatory requests on October 5, 2015. Randstad responded to Makaneole's first set of requests for production on December 15, 2014, to Makaneole's second set of requests for production on June 25, 2015, and to Makaneole's interrogatory requests on September 25, 2015. SolarWorld amended its responses to Makaneole's interrogatory requests effective November 30, 2015, after the motions now before the court had already been filed.

By and through his motion (#79) to compel production of documents, Makaneole seeks this court's order compelling all three sets of defendants to produce documents responsive to Requests Nos. 7-8, 10-14, 17, 22, 33, and 35 of his first set of requests for production. By and through his motion (#81) to compel interrogatory responses, Makaneole seeks this court's order

Page 16 - FINDINGS AND RECOMMENDATION

compelling Kelly and Randstad to provide adequate responses to his Interrogatory Requests Nos. 1-3, 5, and 6 and compelling SolarWorld to provide adequate responses to his Interrogatory Requests Nos. 1-8 and 10. Those requests, and the defendants' responses thereto, are set forth and discussed below.

## ANALYSIS

### I.   Defense Motions for Summary Judgment

#### A.   Federal Civil Procedure Rule 56(d)

Makaneole asserts a potential, contingent need for further discovery before he can respond properly to defendants' arguments in favor of summary judgment "[t]o the extent that any Defendant seeks to prevail on an assertion that Plaintiff's work time was never reduced, or that Plaintiff suffered no loss of wages as a result of the time clock programming." Because no defendant advances any such argument, no grounds exist for deferring adjudication of the summary judgment motions now before the court under Federal Civil Procedure Rule 56(d).

#### B.   SolarWorld's Motion for Summary Judgment; Kelly's and Randstad's Argument that Makaneole's Claims Are Barred Pursuant to the Separation and Release Agreement of January 23, 2013

SolarWorld's motion (#82) for summary judgment is premised in its entirety on the theory that the Separation and Release Agreement of January 23, 2013, is enforceable to bar all of Makaneole's claims herein. Kelly's motion (#84) and Randstand's motion (#86) are each premised in part on that same theory. Specifically, the gravamen of SolarWorld's motion is that the Separation and Release Agreement is an enforceable contract under Oregon law, and outside the scope of Or. Rev. Stat. § 652.360; to these arguments, Kelly and Randstad each add the argument that their rights under the agreement as an intended third-party beneficiary thereof are

Page 17 - FINDINGS AND RECOMMENDATION

likewise enforceable as a matter of Oregon law. In response to these arguments, Makaneole

takes the position that the Separation and Release Agreement is unenforceable by operation of

Section 652.360.[4] In this section of these Findings and Recommendation, I address the parties'

arguments in connection with SolarWorld's motion in its entirety and in connection with Kelly's

and Randstad's motions to the extent premised on the enforceability of the Separation and

Release Agreement only.

The requisite elements of an enforceable contract under generally applicable Oregon

contract law – mutual promises, mutual assent, and valid consideration exchanged for each

party's promise or promises, *see Wieck v. Hostetter*, 274 Or. App. 457, 471-472 (2015) – appear

to be present in the Separation and Release Agreement, and for purposes of the present analysis, I

assume *arguendo* that they are. Similarly, on the *arguendo* assumption that the Separation and

Release Agreement is an enforceable contract, its plain language appears clearly to establish that

Kelly and Randstad, as "contractors" of SolarWorld, were intended beneficiaries of the

agreement, such that, absent any bar to enforcement of the agreement, its terms would be

enforceable as to Makaneole's claims against Kelly and Randstad. *See Drury v. Assisted Living

Concepts, Inc.*, 245 Or. App. 217, 221 (2011). On those assumptions, it falls to the court to

determine whether the Separation and Release Agreement may be enforced to bar Makaneole's

claims in this action in light of the provisions of Section 652.360.

Generally, "[a]n employer is free to set the terms and conditions of the work and of the

---

[4] Makaneole also advances the argument that the Separation and Release Agreement is unenforceable as an unconscionable agreement; however, because his theory of unconscionability is premised on Oregon's public policy against the enforcement of such agreements as codified at Or. Rev. Stat. § 652.360, his unconscionability argument necessarily stands or falls with his Section 652.360 argument.

compensation and the employee may accept or reject those conditions." *State ex rel Roberts v. Public Finance Co.*, 294 Or. 713, 716 (1983). Notwithstanding the foregoing, "Oregon's wage and hour statutes place some limits on an employer's and employee's ability to freely negotiate all aspects of the employment relationship, including some aspects of compensation." *Erickson v. Am. Golf Corp.*, 194 Or. App. 672, 680 (2004).

Also as a general rule, the Oregon courts will enforce agreements to release or waive causes of action, including causes of action arising out of employment relationships, so long as such agreements are mutually assented to and are supported by valid consideration. *See, e.g., Skinner v. Michaels*, 58 Or. App. 59, 63-64 (1982). However, agreements between employers and employees to release wage-and-hour claims are enforceable only to the extent provided under Or. Rev. Stat. § 652.360. As noted above, Section 652.360 provides as follows:

> (1)    An employer may not by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by [Oregon's wage-and-hour statutes] or any statute relating to the payment of wages, except insofar as the Commissioner of the Bureau of Labor and Industries in writing approves a special contract or other arrangement between the employer and one or more of the employer's employees. The commissioner may not give approval unless the commissioner finds that such contract or arrangement will not prejudicially affect the interest of the public or of the employees involved, and the commissioner may at any time retract such approval, first giving the employer not less than 30 days' notice in writing.

> (2)    A settlement between an employer and an employee of a known and identified claim arising under [Oregon's wage-and-hour statutes] or any statute relating to the payment of wages does not require the commissioner's approval if the settlement does not provide for the employee to relinquish a claim for additional or future violations.

Or. Rev. Stat. § 652.360. The Oregon courts have found that a contract, agreement, or settlement has the effect of "exempt[ing] [an] employer" from the provisions of Oregon's wage and hour

statutes where the parties to the contract agree that the employee party shall not receive all

compensation due and owing from the employer party, notwithstanding that the employee party's

right to receive such compensation is guaranteed by one or more wage and hour statutes. *See*

*Erickson*, 194 Or. App. at 682, 683-686.

 The plain language of the two subsections of Section 652.360 indicates that, absent

approval by the Commissioner of BOLI,  Subection 652.360(1) bars the enforcement of any

agreement purporting to exempt an employer from its wage-payment obligations, but provides no

clear guidance as to whether it is intended to be applied only to agreements purporting to effect

prospective exemption from the wage-payment statutes or instead to agreements purporting to

effect either prospective or retrospective wage-payment exemptions. *But see Kling v. Exxon*

*Corp.*, 74 Ore. App. 399 (1985) (applying Section 652.360 retrospectively to bar enforcement of

an unapproved release agreement prior to the amendment that added Subection 652.360(2) to the

statute).  By contrast, the plain language of the statute unambiguously indicates that where such

an agreement purports (retrospectively) to settle one or more accrued, known, and identified

wage claims – and no additional claim that is not accrued, known, and identified – Subsection

652.360(2) permits the agreement to be enforced in the absence of approval by the

Commissioner.

 Makaneole takes the position that "known and identified" necessarily must mean, for

purposes of Section 652.360(2), that the claim to be released must be known to both parties to

the release agreement and must be specifically identified in the release agreement for the release

to be effective absent approval by the BOLI Commissioner.  I agree with Makaneole that no

other interpretation of that phrase would be plausible, in that the phrase must necessarily have

some meaning, the proposed meaning comports with the commonly understood meaning of the words of the phrase, and any alternative construction would either do violence to the commonly understood meaning of the terms or bring the phrase into conflict with other provisions of the statute. At oral argument in connection with the motions now before the court, counsel for SolarWorld argued that to adopt Makaneole's construction of the phrase would open the floodgates to a wave of litigation as to whether released claims were adequately "identified" in release agreements, but I am entirely unpersuaded by that prediction: it appears clear that to identify a claim it is necessary to cite the law under which the claim arises and to provide a brief description of the facts giving rise to the claim, with sufficient particularity to permit reasonable investigation as to whether the claim is valid. By contrast, if defendants' proposed interpretation of the phrase were adopted – namely, that for a claim to be "known" the potential claimant must be aware that he or she may have a claim of some description against the party to be released, and that for a claim to be "identified" it is sufficient to describe a general class of claims that would include the claim to be released – parties to release agreements would have a clear incentive to litigate the question whether vaguely or generally identified claims were in fact subjectively "known" to both parties. I therefore find that Section 652.360(2) does not relieve an employer of the obligation to obtain the approval of the BOLI Commissioner before seeking enforcement of a release agreement where the claim to be released is not known to both parties and is not specifically identified with adequate particularity in the release agreement itself.

Analysis of the legislative history of the amendment that added Subsection 652.360(2) to the statute provides no grounds for significantly modifying any of the foregoing conclusions. As noted above, in connection with legislative deliberation regarding the proposed amendment,

BOLI Commissioner Roberts submitted a statement to the House committee indicating that the

proposed language of Subsection 652.360(2) was intended to specify "that wage claim

settlements do not require the commissioner's approval *unless the settlement would have the*

*employee relinquish a claim on additional or future violations*," Submission of BOLI

Commissioner Jack Roberts, February 20, 2001, House Committee on Business, Labor, and

Consumer Affairs (emphasis supplied), and orally testified consistently to the Senate committee

that "w[h]ere there is a known and identified claim – *not a blanket waiver of claims* – . . . [BOLI]

do[es]n't have to . . . approve [the settlement of that known and identified claim] *provided [the*

*settlement agreement] only settles the known, identified claim and doesn't p[urport] to settle any*

*additional or future violations*," Declaration (#112) of Stephanie J. Brown, Exh. 1 (Declaration

of Greg Wasson) (emphasis supplied).  The House committee and Senate committee appear to

have accepted and adopted Commissioner Roberts' characterization of the intended effect of the

proposed new language.  *See* House Committee on Business, Labor, and Consumer Affairs, Staff

Measure Summary of HB 2220, 71st Oregon Legislative Assembly; Senate Committee on

Business, Labor, and Economic Development, Staff Measure Summary of HB 2220, 71st Oregon

Legislative Assembly.  Because settlements of known and identified claims are necessarily

retrospective rather than prospective, the fact that the legislature saw a need to add Subsection

652.360(2) in order to make clear that such settlements do not require approval by the

Commissioner notwithstanding Subsection 652.360(1) strongly indicates that Subsection

652.360(1) is potentially applicable to agreements purporting to effect either prospective or

retrospective exemptions from wage-payment obligations or penalties.  There does not appear to

be any colorable alternative construction of the plain language of the statute considered in light

of the relevant legislative history.

On that construction, I apply Section 652.360 to the Settlement and Release Agreement between SolarWorld and Makaneole. As noted above, in this action Makaneole alleges all defendants' liability for violation of Oregon's Or. Rev. Stat. 652.120 and 653.010 by failing to pay all wages owed, for violation of Oregon's Or. Rev. Stat. 652.120 and 653.010 by failing to pay overtime wages owed, and for violation of Oregon's Or. Rev. Stat. 652.140 by failing to pay all wages owed at the termination of employment. As to Makaneole's Section 652.140 claim against SolarWorld, I note that, pursuant to Section 652.140(1), SolarWorld had until "the end of the first business day after [Makaneole's] discharge or termination" to pay Makaneole all earned but unpaid wages it owed him. Or. Rev. Stat. § 652.140(1). Makaneole's termination occurred on January 23, 2013, the same day that the Settlement and Release Agreement was executed. Assuming the truth of Makaneole's allegations in support of his claims, it therefore follows that, at the time the purported release was executed, SolarWorld could not yet have violated its wage-payment obligations codified at Section 652.140, *see Russell v. U. S. Bank N.A.*, 246 Or. App. 74 (2011) (a claim for penalty wages continues to accrue following the date of an employee's termination if the employer fails to pay the employee all wages due and owing), with the result that to the extent the agreement purported to exempt SolarWorld[5] from liability for failure to comply with Section 652.140, the agreement is unenforceable as a matter of Oregon law absent approval by the Commissioner of BOLI, *see* Or. Rev. Stat. § 652.360(1). Because the BOLI Commissioner did not approve the Settlement and Release Agreement, pursuant to Section

---

[5] By contrast, assuming the truth of Makaneole's allegations in support of his claim, at the time the Separation and Release Agreement was signed, his Section 652.140 claims against Kelly and Randstad had already accrued.

Page 23 - FINDINGS AND RECOMMENDATION

652.360 the agreement was ineffective to exempt SolarWorld from liability to Makaneole under Section 652.140, and SolarWorld's motion (#82) for summary judgment should be denied as to Makaneole's Section 652.140 claim against it.

As to Makaneole's Section 652.120 claims against all defendants and Section 652.140 claims against Kelly and Randstad, all those claims had plainly accrued at the time the Separation and Release Agreement was executed, such that approval was unnecessary for enforcement of the agreement so long as the claims to be released were known to the parties and identified, and so long as the agreement did not also purport to release additional claims. As noted above, the operative language of the release was as follows:

> [Makaneole]. . . unconditionally releases and discharges SolarWorld, its affiliates, subsidiaries, and related corporations and each entity's respective owners, directors, officers, shareholders, employees, agents, contractors, successors and assigns, from *any and all known or unknown liability, damages claims, causes of action or suits of any type, including claims under any common law theories, including but not limited to, breach of contract or tort or tort-like theories and under any state or federal, constitutional, civil rights, labor, and employment laws, including but not limited to, Employee Retirement Income Security Act (ERISA), Title VII of the Civil Rights Act of 1964, the Post Civil War Civil Rights Acts (42 USC §§ 1981-1988), the Civil Rights Act of 1991, the Equal Pay Act, Older Workers' Benefit Protection Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Worker Adjustment and Retraining Notification Act, the Rehabilitation Act of 1973, the Uniformed Services Employment and Reemployment Rights Act, the Fair Labor Standards Act, Executive Order 11246, and the Family and Medical Leave Act, all as amended, including any regulations or guidelines thereunder.*

Separation and Release Agreement, ¶ 5 (emphasis supplied). To the extent it purports to effect release of claims for violation of wage-payment statutes, this release patently falls afoul of Section 652.360(2) in at least two respects. First, it does not identify the wage-payment claim to be released with any particularity whatsoever. Second, it openly purports to release other claims

in addition to the claim arguably known to Makaneole at the time the agreement was executed.

Because Section 652.360(2) relieves employers of the need to obtain approval from the BOLI

Commissioner (which was not obtained here) before enforcing a release only of known and

identified claims, it follows that the Separation and Release Agreement was ineffective to release

any of Makaneole's then-accrued claims asserted in this action.  In consequence, SolarWorld's

motion (#82) for summary judgment should be denied as to all of Makaneole's remaining claims

against it, and Kelly's motion (#84) for summary judgment and Randstad's motion (#86) for

summary judgment should be denied to the extent premised on the Separation and Release

Agreement.

> ### C.    Kelly's and Randstad's Argument that Makaneole's Claims Against Them Are Statutorily Time-Barred

Kelly and Randstad argue, in the alternative to their arguments premised on the

enforceability of the Separation and Release Agreement, that Makaneole's claims against them

are statutorily time-barred in their entirety.  Kelly notes that Makaneole's employment by Kelly

ended as of December 12, 2011, and Randstad notes that Makaneole's employment by Randstad

ended as of February 21, 2012; Makaneole brought his claims against both employers on August

26, 2014.  Because August 26, 2014, is more than two years and fewer than three years after

Makaneole's claims against either employer accrued (with Makaneole's conceded knowledge that

he had such claims against each such employer), it necessarily follows that any of Makaneole's

claims subject to a statutory limitations period of two years or shorter is time-barred, whereas any

of his claims subject to a statutory limitations period of three years or longer is not statutorily

time-barred.

Page 25 - FINDINGS AND RECOMMENDATION

The limitations period applicable to a claim for unpaid regular wages under Oregon law is six years. *See* Or. Rev. Stat. § 12.080(1); *see also State ex rel. Nilsen v. Ben Jacques Chevrolet Buick, Inc.*, 16 Or. App. 552, 554-555 (1974). By contrast, the limitations period applicable to claims for unpaid overtime or premium wages, or for penalties arising out of failure to pay overtime or premium wages, is two years. *See* Or. Rev. Stat. 12.110(3).[6] The limitations period applicable to claims for statutory waiting-time penalties in connection with failure to pay all wages due and owing at the termination of employment is three years. *See* Or. Rev. Stat. 12.100(2); *see also Russell v. U. S. Bank N.A.*, 246 Or. App. 74, 77 (2011).

As noted above, Makaneole alleges three claims against each defendant or set of defendants in this action: one claim under Or. Rev. Stat. 652.120 and 653.010 for failing to pay all regular wages owed, one under Or. Rev. Stat. 652.120 and 653.010 for failing to pay all overtime wages owed, and one under Or. Rev. Stat. 652.140 for failing to pay all wages owed at the termination of employment. As to Makaneole's claim against Kelly and Randstad for unpaid regular wages, that claim is subject to a six-year statute of limitations, *see* Or. Rev. Stat. § 12.080(1), and is therefore not statutorily time-barred. Kelly and Randstad argue, however, that Makaneole has no viable claim for unpaid regular wages against them, as he has conceded that he worked a sufficient number of hours in every week that he worked for each of those employers to earn at least some overtime compensation, *see* Makaneole Depo. 130:10 – 133:18, 199:24 – 201:22, such that he cannot be owed unpaid regular wages. I decline so to find on the current

---

[6] The Ninth Circuit has held that Oregon's two-year limitations period for unpaid overtime wages is applicable even where a plaintiff purports to waive the right to overtime compensation for hours worked but uncompensated where the uncompensated hours were overtime hours. *See Rowe v. Laidlaw Transit, Inc.*, 244 F.3d 1115, 1119 (9th Cir. 2001).

evidentiary record. Although I agree with Kelly and Randstad that Makaneole has conceded that

he earned overtime compensation in every week that he worked for each of those employers, I

disagree that in consequence it is impossible that Makaneole could be owed any unpaid regular

wages by either Randstad or Kelly. It is logically possible, for example, that in a week in which

SolarWorld's electronic timekeeping system deducted 39 minutes from Makaneole's hours

worked, Makaneole earned 30 minutes overtime, such that he is owed 30 minutes of overtime

wages and nine minutes of regular wages for that week; it is also logically possible that Kelly and

Randstad are correct that Makaneole earned no regular wages that were not timely paid during

any week he was employed by either of those employers. For present purposes, I find only that to

the extent Makaneole has a viable claim for unpaid regular wages against either Randstad or

Kelly, that claim is not statutorily time-barred. Kelly's motion (#84) and Randstad's motion

(#86) for summary judgment should therefore each be denied as to Makaneole's Section 652.120

claim for unpaid regular wages to the extent premised on the applicable statute of limitations.

    As to Makaneole's claim for unpaid overtime wages, that claim is subject to a two-year

statute of limitations. In consequence, Makaneole's Section 652.120 claim for unpaid overtime

wages is necessarily time-barred to the extent alleged against each of Kelly and Randstad.

Kelly's motion (#84) and Randstad's motion (#86) for summary judgment should therefore each

be granted as to Makaneole's Section 652.120 claim for unpaid overtime wages to the extent

premised on the applicable statute of limitations.

    As to Makaneole's claim for failure to pay all wages due and owing at the termination of

employment, that claim is subject to a three-year statute of limitations. Kelly and Randstad argue

that because the wages unpaid at Makaneole's termination were (purportedly) necessarily all

overtime wages, the two-year limitations period generally applicable to claims for penalties

arising out of failure to pay overtime wages should instead be applied. However, the Oregon

courts have expressly held that a claim for waiting-time penalties for failure to pay all wages due

and owing at the time of termination is a claim for a penalty rather than for unpaid compensation,

and is independent of the underlying failure to pay. *See Russell*, 246 Or. App. at 77-81. It

follows that the three-year limitations period rather than the two-year limitations period is

applicable to claims for such waiting-time penalties. As such, Makaneole's Section 652.150

claim is not statutorily time-barred to the extent alleged against either Kelly or Randstad, and

Kelly's motion (#84) and Randstad's motion (#86) for summary judgment should therefore each

be denied as to Makaneole's Section 652.150 claim for failure to pay all wages due and owing at

the termination of employment to the extent premised on the applicable statute of limitations.

> **D.    Kelly's Argument that Makaneole's Claims Against It Are Barred Pursuant to the Contractual Limitations Provision of the Employment Application of February 21, 2011**

Kelly argues, in the alternative to its arguments premised on the enforceability of the

Separation and Release Agreement and on the applicable statutes of limitations, that Makaneole's

claims against it (only) are time-barred by operation of the "Limitations on Actions" provision of

its Employment Application, signed by Makaneole on February 21, 2011. As noted above, that

provision purports to require Makaneole to file any claims he might have against Kelly arising

out of his employment by Kelly within 300 days of the date he first had actual or constructive

knowledge of the facts giving rise to such claims. Kelly notes that Makaneole's employment by

Kelly terminated as of December 12, 2011, that Makaneole testified (as discussed above) to

awareness of the complained-of timekeeping practices throughout the tenure of his employment

Page 28 - FINDINGS AND RECOMMENDATION

by Kelly, *see* Makaneole Depo. 37:5 – 39:17, 42:13-23, that Makaneole testified to having read

and understood the provisions of the Employment Application before signing it, *see id.*,

85:20-25, and that Makaneole brought his claims against Kelly as of August 26, 2014, more than

300 days after those claims accrued (including the Or. Rev. Stat. § 652.140 claim, which accrued

some 30 days after the termination of Makaneole's employment by Kelly, *see supra*) with

Makaneole's knowledge of the underlying facts.  On those grounds, Kelly argues the 300-day

contractual limitations period is enforceable, and that it operates to bar Makaneole's claims

against Kelly in their entirety.

  As a general rule, the Oregon courts enforce contractual provisions purporting to provide

limitations periods for breach of the contract in which they appear that are shorter than the

statutory limitations period generally applicable to claims for breach of contract, so long as the

reduced limitations period remains reasonable.  *See Biomass One, L.P. v. S-P Construction*

*(A61560)*, 103 Or. App. 521, 526 n. 4 (1990), *quoting Ausplund v. Aetna Indemnity Co.*, 47 Or.

10, 22 (1905).  Moreover, the Oregon Court of Appeals, in *dicta*, has found that the parties to an

employment relationship may contractually agree to a reduced limitations period for claims

arising out of the employment relationship, without regard to whether such claims sound in

breach of contract, including under the circumstance where the contractual limitations period is

provided in a written form employment application.  *See Hatkoff v. Portland Adventist Med. Ctr.*,

252 Or. App. 210, 222-223 (2012).  The *Hatkoff* court expressly observed that "at some point a

contractual deadline *could* be void as against public policy if it effectively deprives a party of the

reasonable opportunity to vindicate his or her rights," *id.*, at 222 (emphasis original), but did not

find on the facts before it that there was evidence that such a deprivation had occurred, *see id.*

Page 29 - FINDINGS AND RECOMMENDATION

Still in *dicta*, the *Hatkoff* court expressly opined that a 90-day contractual period for initiating an age-discrimination claim would be enforceable. *See id.* at 222-223.

Makaneole argues, as he did in opposition to the defendants' arguments that his claims were barred by the Separation and Release Agreement, that Or. Rev. Stat. § 652.360 bars enforcement of the agreement that purports to limit his ability to bring claims for failure to pay wages. In this context, however, his argument is unpersuasive. First, the limitations periods applicable to wage claims codified in Chapter 12 of the Oregon Revised Statutes are neither wage and hour statutes nor statutes relating to the payment of wages, such that they may be abrogated without implicating Section 652.360. *See* Or. Rev. Stat. § 652.360. Second, reduction of the limitations period for bringing a wage claim is not, so long as the reduced period is reasonable, an exemption from liability or penalties imposed by Oregon's wage-payment laws, such that even if the limitations statutes were construed as wage statutes, Section 652.360(1) would not require approval by the BOLI Commissioner before the contractual limitations period could be enforceable (Section 652.360(2) is plainly inapposite on its face even on the *arguendo* assumption that the statutes of limitations were statutes relating to the payment of wages). I therefore find that Section 652.360 constitutes no bar to enforcement of the Limitations on Actions provision of the Employment Application.

In the alternative, Makaneole argues that the Limitations on Actions provision of the Employment Application is unenforceable due to being both substantively and procedurally unconscionable. The Oregon Supreme Court has provided the following guidance as to determining unconscionability:

Unconscionability may be procedural or substantive. Procedural

Page 30 - FINDINGS AND RECOMMENDATION

unconscionability refers to the conditions of contract formation and focuses on two factors: oppression and surprise. *See, e.g.,* John Edward Murray, Jr., *Murray on Contracts* § 96(b), 555-56 (4th ed 2001) (describing components of procedural unconscionability). Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Ore App 553, 566-567, 152 P3d 940, 948 (2007); *Acorn v. Household Intern. Inc.*, 211 F Supp 2d 1160, 1168 (ND Cal. 2002). Surprise involves whether terms were hidden or obscure from the vantage of the party seeking to avoid them. *Id.* Generally speaking, factors such as ambiguous contract wording and fine print are the hallmarks of surprise. In contrast, the existence of gross inequality of bargaining power, a take-it-or-leave-it bargaining stance, and the fact that a contract involves a consumer transaction, rather than a commercial bargain, can be evidence of oppression.

Substantive unconscionability, on the other hand, generally refers to the terms of the contract, rather than the circumstances of formation, and focuses on whether the substantive terms contravene the public interest or public policy. *See Restatement* § 208 comment a; *Williston on Contracts* § 18.10 at 91. Both procedural and substantive deficiencies—frequently in combination—can preclude enforcement of a contract or contract term on unconscionability grounds. *Restatement* § 208 comment a.

Identifying whether a contract is procedurally unconscionable requires consideration of evidence related to the specific circumstances surrounding the formation of the contract at issue. By contrast, the inquiry into substantive unconscionability can be more complicated. To discern whether, in the context of a particular transaction, substantive concerns relating to unfairness or oppression are sufficiently important to warrant interference with the parties' freedom to contract as they see fit, courts frequently look to legislation for relevant indicia of public policy. When relevant public policy is expressed in a statute, the issue is one of legislative intent. See *Uhlmann* [*v. Kin Daw*], 97 Ore [681,] 689-90 [(1920)] (so stating). In that situation, the court must examine the statutory text and context to determine whether the legislature intended to invalidate the contract term at issue. *Id.*

*Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555-556 (2014) (footnotes omitted). The party

asserting unconscionability bears the burden of establishing that a challenged contractual

provision is unconscionable. *See W. L. May Co. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975).

A challenged provision is unenforceable if it is substantively unconscionable without regard to

whether it is also procedurally unconscionable; that is, procedural unconscionability is relevant to determining the enforceability of a challenged provision, but is not required to support a finding that the provision is unenforceable due to substantive unconscionability. *See Hatkoff*, 252 Or. App. at 217, *quoting Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 567 (2007).

I agree with Makaneole that, here, some elements of procedural unconscionability are present: the Employment Application was a contract of adhesion prepared by Kelly, and the Limitations on Actions provision thereof appears in fairly small print. However, because Makaneole concededly read and understood the Employment Application's provisions, including the Limitations on Actions provision, before signing the agreement, the contractual limitations period was not hidden from Makaneole for procedural unconscionability purposes, *see id.* at 223-224; *see also Vasquez-Lopez*, 210 Or. App. at 556, 567-569, and because more than mere adhesion is required before an agreement will be found unenforceable on grounds of procedural unconscionability, *see Best v. United States Nat'l Bank*, 303 Or. 557, 560-561 (1987), the Employment Application is not unenforceable against Makaneole on grounds of procedural unconscionability.

Moreover, I disagree with Makaneole that, under applicable Oregon law, the Limitations on Actions provision is substantively unconscionable in its effect. The Oregon courts have specifically found that contractually shortened limitations periods for bringing employment-law claims – including where the shortened limitation period is applicable only to claims brought by the employee against the employer and not to claims brought by the employer against the employee – are not substantively unconscionable. *See Hatkoff*, 252 or. App. at 221-223; *see also Sprague v. Quality Rests. Northwest, Inc.*, 213 Or. App. 521, 526-527 (2007).

Page 32 - FINDINGS AND RECOMMENDATION

Because the Employment Application constitutes a valid contract, *see Wieck*, 274 Or. App. at 471-472, and because no grounds exist for finding its Limitations on Actions provision unenforceable, Kelly's motion (#84) for summary judgment should be granted as to all of Makaneole's claims against Kelly to the extent premised on the Limitations on Actions provision of the Employment Application.

## II.    Makaneole's Motions to Compel

As noted above, the requests for production within the scope of Makaneole's motion (#79) to compel production of documents are, as issued to all three defendants or sets of defendants:  from the first set of requests for production, Requests Nos. 7-8, 10-14, 17, 22, 33, and 35, and from the second set of requests for production, Request for Production No. 1.  The interrogatory requests within the scope of Makaneole's motion (#81) to compel interrogatory responses are, as issued to SolarWorld, Interrogatory Requests Nos. 1-8 and 10, and as issued to Kelly and Randstad, Interrogatory Requests Nos. 1-3, 5, and 6.  Because Makaneole has no viable claims against Kelly, and because no member of the proposed class Makaneole purports to represent has appeared to state any claim against Kelly, I do not consider either motion in connection with Makaneole's discovery requests to the extent issued to Kelly, and each of the two motions (#79, #81) should be denied as to Kelly with leave to refile should a class member with viable claims against Kelly come forward and Kelly thereafter refuse to produce documents or responses to that plaintiff's reasonable discovery requests.

Prior (as here) to a court's decision as to class certification in a putative class action, a putative class action plaintiff is entitled to discovery necessary to determine whether class treatment of the proposed class or classes is appropriate, and otherwise it is within the court's

discretion whether or not to allow class-related discovery in a class action:

> Whether or not discovery will be permitted in a [class action] lies within the sound discretion of the trial court. *See Berland v. Mack*, 48 F.R.D. 121, 126 (S.D. N.Y. 1969). . . . In determining whether to grant discovery [in connection with determining whether class-treatment is appropriate in a putative class action,] the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. **To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.**

*Kamm v. California City Development Co.*, 509 F.2d 205, 209-210 (9th Cir. 1975) (emphasis supplied; footnote omitted).

Where discovery is necessary for the class-treatment determination, it is abuse of discretion to make the determination without permitting such discovery. *See id.* at 210. However, while "in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a *prima facie* showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), *citing Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977).

"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: *e.g.*, the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class." *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625 (C.D. Cal. 2011), *citing Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 359 (1978).

### A.    Makaneole's Motion to Compel Production of Documents

#### 1.    Makaneole's Requests Nos. 7-8 and 10-14 of his First Set of Requests for Production

Makaneole's Request No. 7 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 7:**  Produce all electronic data from Defendants' electronic time clock system including entries for Plaintiff's schedule, Plaintiff's punch-in/punch-out entries (collectively "punches"), all edits made to those punches, all partial or total calculations performed by the electronic time keeping system.  Produce the above in electronically [*sic*] excel, tab or comma delimited, or other similar useable format.

> **[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 7]:**  SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, SolarWorld states that there are no "employment agreements, contracts, covenants and addendums" between it and plaintiff, but that it will produce:  plaintiff's personnel file; plaintiff's payroll records; and plaintiff's time-worked records from SolarWorld's E-Time system.

> **[RANDSTAD'S] RESPONSE [TO REQUEST NO. 7]:**  . . .  [Randstad] objects to Request No. 7 on the grounds that it assumes facts not in evidence as there is no evidence that Randstad edited the time records or punch in and punch out details concerning Plaintiff or any other employee.  Subject to and without waiving the foregoing objections, [Randstad] does not have any data responsive to Request No. 7 inasmuch as it does not maintain possession, custody or control of the electronic time keeping system used by Randstad's temporary employees on assignment at SolarWorld.

Makaneole's Request No. 8 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 8:**  Produce all data sent from Defendants' electronic time clock system to Defendants' payroll system.  This request is limited to the data from Plaintiff's punches and payroll.  Produce the above in electronically [*sic*] excel, tab or comma delimited, or other similar useable format.

**[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 8]:** SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, SolarWorld states that there are no "employment agreements, contracts, covenants and addendums" between it and plaintiff, but that it will produce: plaintiff's personnel file; plaintiff's payroll records; and plaintiff's time-worked records from SolarWorld's E-Time system.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 8]:** ... [Randstad] objects to Request No. 8 on the grounds that it is overly broad and seeks impermissible class-wide merits based discovery because discovery at the earliest stages of a class action is limited to establishing the existence of a class and the suitability of the matter for class adjudication. Defendant also objects to Request No. 8 on the grounds that it seeks confidential information regarding third parties. Subject to and without waiving the foregoing objections, [Randstad] does not have any data responsive to Request No. 8 inasmuch as it does not maintain possession, custody or control of the electronic time keeping system used by Randstad's temporary employees on assignment at SolarWorld.

Makaneole's Request No. 10 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

**REQUEST NO. 10:** Produce all data from Plaintiff's paychecks and pay check stubs issued to Plaintiff from the date of hire to termination. This request includes, but not limited to [*sic*], database fields such as "period start date", "period end date", "pay date", all Earnings field [*sic*], Deduction fields, taxes fields, and pay summary fields. Produce the above in electronically [*sic*] excel, tab or comma delimited, or other similar useable format.

**[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 10]:** SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, SolarWorld states that there are no "employment agreements, contracts, covenants and addendums" between it and plaintiff, but that it will produce: plaintiff's personnel file; plaintiff's payroll records; and plaintiff's time-worked records from SolarWorld's E-Time system.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 10]:** [Randstad] will produce documents responsive to Request No. 10 as it pertains to Makaneole.

Makaneole's Request No. 11 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 11:**  Produce all electronic data from Defendants' electronic time
> clock system including entries for putative class members' schedule, punch-
> in/punch-out entries (collectively "punches", all edits made to those punches, all
> partial or total calculations performed by the electronic time keeping system.
> Produce the above in electronically [*sic*] excel, tab or comma delimited, or other
> similar useable format.

> **[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 11]:**  SolarWorld
> objects to this Request on the grounds that it is overbroad, unduly burdensome
> and not reasonably calculated to lead to the discovery of admissible evidence.
> SolarWorld further objects to this Request on the grounds that, it is not
> discoverable at this time because plaintiff has not yet moved to certify this case as
> a class action, nor has the Court certified this case as a class action.

> **[RANDSTAD'S] RESPONSE [TO REQUEST NO. 11]:** . . . [Randstad]
> objects to Request No. 11 on the grounds that it is overly broad and seeks
> impermissible class-wide merits based discovery because discovery at the earliest
> stages of a class action is limited to establishing the existence of a class and the
> suitability of the matter for class adjudication.  Defendant also objects to Request
> No. 11 on the grounds that it seeks confidential information regarding third
> parties.  Subject to and without waiving the foregoing objections, [Randstad] does
> not have any data responsive to Request No. 11 inasmuch as it does not maintain
> possession, custody or control of the electronic time keeping system used by
> Randstad's temporary employees on assignment at SolarWorld.

Makaneole's Request No. 12 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 12:**  Produce Plaintiff's payroll data, including but not limited to,
> date of check, pay period, regular hours worked, overtime hours worked, regular
> and overtime hourly rate, amount of wages paid, sick time, holiday time, vacation
> time, and all deductions for the entire length of Plaintiff's employment with
> Defendants.  The data should be produced in electronic format as defined above if
> available.

> **[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 12]:**  SolarWorld
> objects to this Request on the grounds that it is overbroad, unduly burdensome
> and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these objections, SolarWorld states that there are no "employment agreements, contracts, covenants and addendums" between it and plaintiff, but that it will produce:  plaintiff's personnel file; plaintiff's payroll records; and plaintiff's time-worked records from SolarWorld's E-Time system.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 12]:**  [Randstad] will produce documents responsive to Request No. 12 as it pertains to Makaneole.

Makaneole's Request No. 13 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

**REQUEST NO. 13:**  Produce all data sent from Defendants' electronic time clock system to Defendants' payroll system.  This request is limited to those records of the putative class members.  Produce the above in electronically [*sic*] excel, tab or comma delimited, or other similar useable format.

**[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 13]:**  SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. SolarWorld further objects to this Request on the grounds that, it is not discoverable at this time because plaintiff has not yet moved to certify this case as a class action, nor has the Court certified this case as a class action.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 13]:**  . . .  [Randstad] objects to Request No. 13 on the grounds that it is overly broad and seeks impermissible class-wide merits based discovery because discovery at the earliest stages of a class action is limited to establishing the existence of a class and the suitability of the matter for class adjudication.  Defendant also objects to Request No. 11 on the grounds that it seeks confidential information regarding third parties.  Subject to and without waiving the foregoing objections, [Randstad] does not have any data responsive to Request No. 13 inasmuch as it does not maintain possession, custody or control of the electronic time keeping system used by Randstad's temporary employees on assignment at SolarWorld.

Makaneole's Request No. 14 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

**REQUEST NO. 14:**  Produce all data from putative class members' paychecks and pay check stubs from the date of hire to termination or until date complaint was filed if putative class member was still employed.  This request includes, but not limited to [*sic*], database fields such as "period start date", "period end date",

"pay date", all Earnings field [*sic*], Deduction fields, taxes fields, and pay
summary fields.  Produce the above in electronically [*sic*] excel, tab or comma
delimited, or other similar useable format.

**[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 14]:**  SolarWorld
objects to this Request on the grounds that it is overbroad, unduly burdensome
and not reasonably calculated to lead to the discovery of admissible evidence.
SolarWorld further objects to this Request on the grounds that, it is not
discoverable at this time because plaintiff has not yet moved to certify this case as
a class action, nor has the Court certified this case as a class action.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 14]:** . . . [Randstad]
objects to Request No. 14 on the grounds that it is overly broad and seeks
impermissible class-wide merits based discovery because discovery at the earliest
stages of a class action is limited to establishing the existence of a class and the
suitability of the matter for class adjudication.  Defendant also objects to Request
No. 14 on the grounds that it seeks confidential information regarding third
parties.

SolarWorld has produced, in response to the foregoing requests, Makaneole's complete

personnel file and Makaneole's time and payroll records for the period during which he was

employed directly by SolarWorld.  SolarWorld has refused, without significant explanation, to

produce Makaneole's time or payroll records for any period during which he performed

employment services at SolarWorld's facilities on behalf of SolarWorld while employed directly

by either Kelly or Randstad.  In addition, SolarWorld has refused to produce any of the requested

documents in connection with absent putative class members.  In defense of the latter refusal,

SolarWorld argues that Makaneole is not entitled to the time and payroll records of absent

putative class members at this stage of these proceedings, in that no class has yet been certified

and in that it has already conceded expressly that the same timekeeping practices and procedures

reflected in Makaneole's time and payroll calculations were applied uniformly to all proposed

class members, such that discovery in connection with absent class members is unnecessary for

litigation of the anticipated class certification question. Randstad has produced all responsive documents within its possession and control other than documents pertaining to absent class members, for the same reasons.

Makaneole is plainly entitled to production of SolarWorld's time and payroll records in connection with hours expended by Makaneole on SolarWorld's behalf during the periods when Makaneole was directly employed by Kelly and by Randstad. Such discovery goes directly to calculation of damages and to the merits of his claims. Makaneole's motion (#79) to compel production of documents should therefore be granted in part as to Makaneole's Requests Nos. 7-8 and 10-14 of his first set of requests for production to the extent issued to SolarWorld, and SolarWorld should be ordered to produce its time and payroll records in connection with hours expended by Makaneole on SolarWorld's behalf during the periods when Makaneole was directly employed by Kelly and by Randstad.

As to responsive documents pertaining to absent class members, I agree with the defendants that, to the extent they have expressly conceded that the timekeeping practices and procedures applied to Makaneole's time and payroll calculations were applied uniformly to all proposed class members, Makaneole has no need for such discovery in order to litigate the class certification question. Makaneole's motion (#79) to compel production of documents should therefore be denied as to Makaneole's Requests Nos. 7-8 and 10-14 of his first set of requests for production other than to the extent set forth above.

> **2.      Makaneole's Request No. 17 of his First Set of Requests for Production and Request for Production No. 1 of his Second Set of Requests for Production**

Makaneole's Request No. 17 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

**REQUEST NO. 17:**  Produce all contracts and agreements regarding submission of labor to the Solarworld manufacturing facility.  This request is limited to a six year period prior to the filing of the complaint in this action.  This request includes, but is not limited to, Documents and Electronic Data as defined above.

**[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 17]:**  SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 17]:** . . .  [Randstad] objects to Request No. 17 on the grounds that it seeks confidential, proprietary documents concerning Randstad's internal pricing structure with its clients which are not relevant to the facts or claims in the Complaint.

Makaneole's Request No. 1 of his second set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

**REQUEST FOR PRODUCTION NO. 1:**  All emails, text messages, correspondences [*sic*], electronic data, notes, letters, and documents exchanged or provided between Defendants, including between Defendant's [*sic*] attorneys, that in any way relate to this case.  This Request specifically excludes any documents subject to privilege that is exclusively between the Solarworld entities named as a defendant [*sic*] in this case.  This Request further excludes responsive documents between attorneys representing the Solarworld entities.  This Request further excludes any responsive document to which any attorney at Schuck Law, LLC is already cc'd on or otherwise provided [*sic*].

**[SOLARWORLD'S] RESPONSE [TO REQUEST FOR PRODUCTION NO. 1]:**  SolarWorld Defendants object to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  SolarWorld Defendants further object to this request on the grounds that it expressly seeks documents protected from disclosure under the attorney-client privilege and/or the work-product doctrines.  The responsive documents to this Request include: (1) a joint defense agreement; and (2) communications contained in emails between counsel for defendants relating to the wage claims alleged by defendants.  These documents are all protected by the joint defense/common interest privilege and/or the work product doctrine, and are not subject to production.

**[RANDSTAD'S] RESPONSE [TO REQUEST FOR PRODUCTION NO. 1]:**

> [Randstad] objects to Request No. 1 on the grounds that it is overly broad and
> unduly burdensome. [Randstad] also objects to Request No. 1 on the grounds that
> it is not reasonably calculated to lead to the discovery of admissible evidence.
> [Randstad] further objects to Request No. 1 on the grounds that it seeks
> documents and communications that are protected from disclosure by the
> attorney-client privilege, the work-product doctrine and/or the joint
> defense/common interest privilege because the documents responsive to this
> request include communications and statements which were made in the course
> and furtherance of a joint defense effort by the Defendants in this litigation.

It appears that, after Makaneole filed his motion to compel production of documents, but before any defendant responded thereto, SolarWorld produced all documents responsive to Request No. 17; it further appears that Randstad has already produced all documents within its possession responsive to that same request. Makaneole's motion (#79) to compel production of documents should therefore be denied as moot as to Request No. 17 of Makaneole's first set of requests for production.

As to Request No. 1 of Makaneole's second set of requests for production, while I agree with the defendants that the request is overbroad to a degree, I agree with Makaneole that he is entitled to some of the requested documents. Specifically, Makaneole is entitled to production of responsive documents constituting communications specifically regarding the defendants' fulfillment or discussion of their obligations under their contracts with one another and to the labor/hours provided by employees of the defendants pursuant to those same contracts, where such communications relate to Makaneole individually or to any of the timekeeping practices specifically complained of in this lawsuit (as applied to any putative class member or in general); such communications are likely to lead to the production of admissible evidence material to Makaneole's claims. Makaneole's motion (#79) to compel production of documents should therefore be granted as to Request No. 1 of Makaneole's second set of requests for production to

Page 42 - FINDINGS AND RECOMMENDATION

the extent issued to SolarWorld or to Randstad.

### 3.   Makaneole's Requests Nos. 22 and 33 of his First Set of Requests for Production

Makaneole's Request No. 22 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 22:**  Produce all documents relating to the termination of
> employment with Defendant for any putative class member.  This request
> includes, but is not limited to, any termination reports, exit reports/interviews, any
> documents setting out the date of separation from employment, the method of
> separation (*e.g.*, quit with 48 hours' of notice, quit without notice, fired), and
> Electronic Data as defined above.  This request also includes terminations from
> one Defendant where the employee was reporting to work for another Defendant.

> **[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 22]:**  SolarWorld
> objects to this Request on the grounds that it is overbroad, unduly burdensome
> and not reasonably calculated to lead to the discovery of admissible evidence.
> SolarWorld further objects to this Request on the grounds that, it is not
> discoverable at this time because plaintiff has not yet moved to certify this case as
> a class action, nor has the Court certified this case as a class action.

> **[RANDSTAD'S] RESPONSE [TO REQUEST NO. 22]:** . . . [Randstad]
> objects to Request No. 22 on the grounds that it is overly broad and seeks
> impermissible class-wide merits based discovery because discovery at the earliest
> stages of a class action is limited to establishing the existence of a class and the
> suitability of the matter for class adjudication.  [Randstad] also objects to Request
> No. 22 on the grounds that it seeks confidential information regarding third
> parties.

Makaneole's Request No. 33 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

> **REQUEST NO. 33:**  Produce all documents evidencing the date on which any
> employee's [*sic*], for whom Defendants provided time records in response to [*sic*]
> employment ended in the three years preceding the filing of Plaintiff's complaint.
> This request includes the situation where an employment ends from [*sic*] one
> Defendant but the employee continues working at Solarworld's Hillsboro, Oregon
> manufacturing facility.

[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 33]: SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. SolarWorld further objects to this Request on the grounds that, it is not discoverable at this time because plaintiff has not yet moved to certify this case as a class action, nor has the Court certified this case as a class action.

[RANDSTAD'S] RESPONSE [TO REQUEST NO. 33]: . . . [Randstad] objects to Request No. 33 on the grounds that it is vague and ambiguous because the phrases "time records in response to employment" and "situation where an employment ends from one Defendant" are completely unintelligible. {Randstad} also objects to Request No. 33 on the grounds that it is overly broad and seeks impermissible class-wide merits based discovery because discovery at the earliest stages of a class action is limited to establishing the existence of a class and the suitability of the matter for class adjudication.

Makaneole has already received responsive documents pertaining to the termination of

his own employment. However, as discussed above, because he is in possession of defendants'

concessions that the same timekeeping practices applied to Makaneole were applied to all absent

class members, Makaneole is not entitled to pre-certification production of otherwise responsive

documents. Makaneole's motion (#79) to compel production of documents should therefore be

denied as to Requests Nos. 22 and 33 of Makaneole's first set of requests for production.

### 4.   Makaneole's Request No. 35 of his First Set of Requests for Production

Makaneole's Request No. 35 of his first set of requests for production, and SolarWorld's

and Randstad's responses thereto, are as follows:

REQUEST NO. 35: For any electronic data produced by Defendant, Produce all data dictionaries for the fields so provided by Defendants. Data dictionaries are all explanations, written in any form, which describe, explain, or otherwise detail in any way what the data [sic] in any field Defendant produces.

[SOLARWORLD'S] RESPONSE [TO REQUEST NO. 35]: SolarWorld objects to this Request on the grounds that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

SolarWorld further objects to this Request on the grounds that it is duplicative of other discovery already conducted in [specified related litigation].

**[RANDSTAD'S] RESPONSE [TO REQUEST NO. 35]:** . . . [Randstad] objects to Request No. 35 on the grounds that it is overly broad and seeks impermissible class-wide merits based discovery because discovery at the earliest stages of a class action is limited to establishing the existence of a class and the suitability of the matter for class adjudication.  Subject to and without waiving the foregoing objections, [Randstad] does not have any data responsive to Request No. 35 inasmuch as it does not maintain possession, custody or control of the electronic time keeping system used by Randstad's temporary employees on assignment at SolarWorld.

It appears that the defendants have produced all documents responsive to this request.

Makneole's motion (#79) to compel production of documents should therefore be denied as moot as to Makaneole's Request No. 35 of his first set of requests for production.

### B.    **Makaneole's Motion to Compel Interrogatory Responses**

#### 1.    **Makaneole's Interrogatories Nos. 1-8 and 10 of his Interrogatories issued to SolarWorld**

It appears that, during the process of conferring regarding Makaneole's motion (#81) to compel interrogatory responses, SolarWorld advised Makaneole that it would amend its previously produced interrogatory responses, but it did not do so before Makaneole filed his motion.  SolarWorld subsequently amended its discovery responses in fulfillment of its commitment to do so, and the amended responses have been provided to the court.

I have analyzed the amended responses, and I find that the amended responses are full and fair.  Makaneole's motion (#81) to compel interrogatory responses should therefore be denied as moot as to Interrogatories Nos. 1-8 and 10 of Makaneole's interrogatories issued to SeaWorld, with leave to refile in the event Makaneole disagrees with my finding.

2.    Makaneole's Interrogatories Nos. 1-3 and 5-6 of his Interrogatories
      issued to Randstad

      a.    Makaneole's Interrogatory No. 1 of his Interrogatories issued
            to Randstad

Makaneole's Interrogatory No. 1 of his interrogatories issued to Randstad, and Randstad's

response thereto, are as follows:

INTERROGATORY NO. 1: Describe in detail the entire process used by
Defendant [Randstad] to track and record hours worked, for purposes of payroll
and paying wages, by its employees who were assigned to work at [SolarWorld].
This request includes, but is not limited to, what time clocks were used, how the
employee clocked-in, what clock-in and clock-out punches were required, what
adjustments were made to the time or punches, what information was given to
payroll to pay wages.

[RANDSTAD'S] RESPONSE [TO INTERROGATORY NO. 1]: . . .
[Randstad] objects to Interrogatory No. 1 on [various grounds]. Subject to and
without waiving [its] objections, [Randstad] states that it has paid its employees
on assignment at SolarWorld from time recorded on paper time sheets completed
by the employee and from electronic time cards since it began providing
temporary staffing services to SolarWorld. Responding further, Randstad states
that its employees on assignment at SolarWorld have had to clock in or "sign in"
on their paper time sheet at the start of the work day, clock out or "sign out" on
their paper time sheet at the end of the workday and clock in and out (or sign it
[*sic*] and out on their paper timesheet) for their meal period. Randstad employees
on assignment at SolarWorld have never had to clock in or out (or sign in or out
on their time sheet) for their rest periods.

Randstad's response to Makaneole's Interrogatory No. 1 appears to be full and fair. To

the extent Makaneole requires more detail regarding the process of recording hours worked, he

must seek that information from SolarWorld, the entity that at all material times controlled that

process. Makaneole's motion (#81) to compel interrogatory responses should therefore be denied

as to Makaneole's Interrogatory No. 1 of his interrogatories issued to Randstad.

   b.   **Makaneole's Interrogatory No. 2 of his Interrogatories issued
        to Randstad**

   Makaneole's Interrogatory No. 2 of his interrogatories issued to Randstad, and Randstad's

response thereto, are as follows:

   **INTERROGATORY NO. 2:** Describe in detail the process by which Defendant
   [Randstad] received or became in possession of the hours worked for purposes of
   calculating payroll for its employees who were assigned to work at [SolarWorld].
   This request includes but is not limited to information regarding how the
   information is received, what format information is received in, what program or
   programs is used to transmit and receive the information.

   **[RANDSTAD'S] RESPONSE [TO INTERROGATORY NO. 2]:** . . .
   [Randstad] objects to Interrogatory No. 2 on [various grounds]. Subject to and
   without waiving [its] objections, [Randstad] states that it has paid its employees
   on assignment at SolarWorld from the time recorded on paper time sheets
   completed by the employee and from electronic time cards since it began
   providing temporary staffing services to SolarWorld.

   I agree with Makaneole that Randstad failed to provide the details requested in the

interrogatory, which include "how the information is received, what format information is

received in, what program or programs is used to transmit and receive the information."

Makaneole's motion (#81) to compel interrogatory responses should therefore be granted as to

Makaneole's Interrogatory No. 2 of his interrogatories issued to Randstad, and Randstad should

be directed to supplement its response accordingly.

   c.   **Makaneole's Interrogatory No. 3 of his Interrogatories issued
        to Randstad**

   Makaneole's Interrogatory No. 3 of his interrogatories issued to Randstad, and Randstad's

response thereto, are as follows:

   **INTERROGATORY NO. 3:** name and describe every data field from
   Solarworld's electronic time keeping system received by Defendant [Randstad] for
   purposes of calculating payroll for its employees who were assigned to work at

Page 47 - FINDINGS AND RECOMMENDATION

[SolarWorld]. This request includes but is not limited to information regarding how the information is received, what format information is received in, what program or programs is used to transmit and receive the information.

**[RANDSTAD'S] RESPONSE [TO INTERROGATORY NO. 3]:** . . .
[Randstad] objects to Interrogatory No. 3 . . . .

According to Randstad's assertions, after Makaneole filed his motion to compel, Randstad learned that it failed to retain the information it received from SolarWorld in connection with Makaneole's time worked at SolarWorld. In consequence, it lacks the information required (which is available from SolarWorld) to respond to the interrogatory. Makaneole's motion (#81) to compel interrogatory responses should therefore be denied as moot as to Makaneole's Interrogatory No. 3 of his interrogatories issued to Randstad.

> **d.     Makaneole's Interrogatory No. 5 of his Interrogatories issued to Randstad**

Makaneole's Interrogatory No. 5 of his interrogatories issued to Randstad, and Randstad's response thereto, are as follows:

**INTERROGATORY NO. 5:** Describe in detail the process by which Defendant [Randstad] used to calculate wages for its employees who were assigned to work at [SolarWorld].

**[RANDSTAD'S] RESPONSE [TO INTERROGATORY NO. 5]:** . . .
[Randstad] objects to Interrogatory No. 5 on [various grounds]. Subject to and without waiving [its] objections, [Randstad] states that it has calculated the wages due to its employees on assignment at SolarWorld from time recorded on paper time sheets completed by the employee and from electronic time cards since it began providing temporary staffing services to SolarWorld.

I agree with Makaneole that Randstad failed to provide the detail requested in the interrogatory regarding the process of calculation. Makaneole's motion (#81) to compel interrogatory responses should therefore be granted as to Makaneole's Interrogatory No. 5 of his

interrogatories issued to Randstad, and Randstad should be directed to supplement its response accordingly, including whether the calculation of wages is automated or performed by hand, and if automated the programs and/or equipment used, the algorithms or formulas relied upon, and the manner in which data is inputted.

> e.    **Makaneole's Interrogatory No. 6 of his Interrogatories issued to Randstad**

Makaneole's Interrogatory No. 6 of his interrogatories issued to Randstad, and Randstad's response thereto, are as follows:

> **INTERROGATORY NO. 6:**  Provide the name, last known address, dates assigned to work at [SolarWorld], and the date any employee's employment ended for Defendant [Randstad] for all of [that] Defendant['s] employees who worked at [SolarWorld].
>
> **[RANDSTAD'S] RESPONSE [TO INTERROGATORY NO. 6]:** . . . [Randstad] objects to Interrogatory No. 6 . . . .

I agree with Randstad's tacit position that Makaneole is not at this time entitled to the requested information as to absent putative class members (for reasons discussed above). Accordingly, Makaneole's motion (#81) to compel interrogatory responses should be dened as to Makaneole's Interrogatory No. 6 of his interrogatories issued to Randstad.

**C.    Fees and Costs**

Because each party's position in connection with the parties' discovery disputes was justified in part and not justified in part, each party should bear its own fees and costs in connection with litigating Makaneole's motions (#79, #81) to compel.

## CONCLUSION

For the reasons set forth above, Makaneole's motion (#79) to compel production of

documents and motion (#81) to compel interrogatory responses should each be granted in part and denied in part as discussed above, SolarWorld's motion (#82) for summary judgment should be denied in its entirety, Kelly's motion (#84) for summary judgment should be granted in part and denied in part as discussed above, Randstad's motion (#86) for summary judgment should be granted in part and denied in part as discussed above, Kelly's request (#119) for judicial notice and Randstad's request (#122) for judicial notice should each be granted, summary judgment should be granted in Randstad's favor as to Makaneole's Section 652.120 claim against it for failure to pay overtime wages owed, and summary judgment should be granted in Kelly's favor as to all of Makaneole's claims against it.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of September, 2016.

Honorable Paul Papak
United States Magistrate Judge

Page 50 - FINDINGS AND RECOMMENDATION