UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL MAKANEOLE, individually and on behalf of all similarly situated individuals, | 3:14-cv-1528-JR |
| Plaintiffs, | FINDINGS AND |
| V. | RECOMMENDATION |
| SOLARWORLD INDUSTRIES AMERICA, INC.; SOLARWORLD INDUSTRIES AMERICA, LP; SOLARWORLD INDUSTRIES SERVICES, LLC; RANDSTAD PROFESSIONALS US, LP; KELLY SERVICES, INC.; SUNPOWER NORTH AMERICA MANUFACTURING LLC; SUNPOWER MANUFACTURING OREGON, LLC; AND SUNPOWER CORPORATION, | |
| Defendants. | |

RUSSO, Magistrate Judge:

Plaintiff initiated this action on August 26, 2014 in the Circuit Court for the State of Oregon for the County of Multnomah alleging defendants failed to pay all wages for time worked by plaintiff and similarly situated individuals. On September 24, 2014, defendants removed the action to this Court.

Page 1 – FINDINGS AND RECOMMENDATION

After several dispositive motions, class certification,[1] and settlement by one of the defendants, only SolarWorld Industries America, Inc., SolarWorld Industries America, LP, SolarWorld Industries Services, LLC, and SolarWorld Power Projects, Inc. ("SolarWorld") remained as defendants for plaintiffs' claims seeking unpaid regular and overtime wages and civil penalty wages pursuant to Or. Rev. Stat. §§ 652.120, 652.140, 652.150, 653.261, 653.055.

On September 24, 2019, plaintiffs moved to amend the complaint to add SunPower North America Manufacturing LLC, SunPower Manufacturing Oregon LLC, and SunPower Corporation ("SunPower") as defendants in the case. The Court granted plaintiffs' motion to amend regarding the Chapter 652 private right of action claims but denied the motion regarding plaintiffs' Chapter 653 claims. Makaneole v. SolarWorld Indus. America, Inc., 2019 WL 4620385, at *4 (D. Or. June 3, 2019). Specifically, the Court noted that SunPower could be included as a defendant on the theory that it may be liable for the underlying wage claims as a successor employer to SolarWorld. Id. at *3-4.

On February 12, 2021, the Court granted class certification as to SunPower. Opinion & Order (ECF 331). Plaintiff now moves for partial summary judgment on behalf of the class on the issue of liability and damages. For the reasons stated below, the motion should be granted in part.

## BACKGROUND

In March 2009, SolarWorld implemented a time and attendance system in which employees, including all class members, were instructed to punch into an electronic time-keeping system at the beginning of their shifts, punch out during their meal break, punch back in at the conclusion of their meal break, and punch out again at the end of their shifts. Declaration of Robin

---

[1] On March 7, 2018, Judge Paul Papak issued a Findings and Recommendation recommending plaintiff's motion for class certification be granted (ECF 198). On May 29, 2018, Judge Anna Brown adopted the recommendation, and the Court certified all non-exempt current and former employees of defendants SolarWorld and Randstad who used SolarWorld's electronic time-keeping system for the six-year period prior to filing the complaint (ECF 210).

Page 2 – FINDINGS AND RECOMMENDATION

Nelson in Multnomah County Case No. 1212-16562 (attached as Exhibit 5 to the Declaration of David Shuck (ECF 165-5)) at ¶ 4.  The data from the system was electronically uploaded to the payroll system where it was used to calculate employee compensation.  Id.  SolarWorld also implemented a "5-Minute Rule" in which the time-keeping system was programmed to adjust punch times that were five minutes before or after the scheduled work time such that:

> if an hourly employee was scheduled to work from 8:00 a.m. to 5:00 p.m., but punched into the time clock at 7:55, 7:56, 7:57, 7:58, 7:59, or 8:00 a.m., the time and attendance system would record his start time as 8:00 a.m.  At the end of the shift, if the employee clocked out at 5:00, 5:01, 5:02, 5:03, 5:04, or 5:05 p.m., the time and attendance system would record his end time as 5:00 p.m.  However, if the employee clocked in late or out early (for example, in at 8:02 a.m. or out at 4:58 p.m.), the time and attendance system recorded the employee's working time the same as the punch time.  Punches outside of the five-minute period (for example, in at 8:06 a.m. or out at 5:10 p.m.) were not adjusted.

Id. at ¶ 5.

> Per the employee handbook:
>
> Accurately recording time worked is the responsibility of every employee.  Non-exempt employees are required to accurately record their daily work time by punching in and out for arrivals, lunch breaks, and departures from work.
> Overtime must be approved in advance by the supervisor. Therefore, non-exempt employees should report to work no more than five (5) minutes prior to their scheduled starting time nor stay more than five (5) minutes after their scheduled stop time without prior authorization from their supervisor.
> ….
> It is the employee's responsibility to verify the accuracy of all time recorded. Employees may review their punches at the time clock or may request a printed copy of their timecards from their supervisors or from the Human Resources department.  The supervisor reviews and then approves the time record before submitting it for payroll processing.  If corrections or modif1cations to the time record are needed, the employee must contact the supervisor to report the necessary correction.

Employee Handbook (attached to the Declaration of Stephanie Brown as Exhibit 26 (ECF 180-16)) at p. 3.  SolarWorld also maintained a sign above each time clock reminding employees not to punch in/out more than five minutes before/after the scheduled start and end of shifts.

Page 3 – FINDINGS AND RECOMMENDATION

Declaration of Robin Nelson in Case No. 3:11-cv-1555-SI (attached Exhibit 4 to the Declaration of David Shuck (ECF165-4)) at ¶ 10.

> According to Robin Nelson, SolarWorld implemented the 5-minute rule because:
>
> After punching in and prior to beginning work, employees typically engaged in personal activities like using the restroom, socializing with their co-workers, and buying food or beverages from the vending machines located at SolarWorld's facility. Some employees also spent time putting on coveralls that many of them wore on the production floor, although they were not necessarily required to do so. The same was generally true at the end of the shifts. SolarWorld's estimate was that these tasks took approximately five minutes to perform. However, it was impossible to judge, on any given day, how long a particular employee spent on pre- or post- shift personal activities. Five minutes was a reasonable estimate of how much time was involved. SolarWorld does not assign employees' tasks to perform "off the clock."

Id. at ¶ 8.[2]

SolarWorld presents testimony establishing that some employees engaged in a variety of "non-compensable activities" prior to shifts but after clocking-in or before clocking-out. See Response (ECF 342) at pp. 5-11. (walking from time clock to locker room (and vice-versa) and wait for others to get out of the way, putting on/taking off non-essential gear, go to the bathroom, put lunch away, socializing with co-workers, get coffee, make a vending machine purchase, wait for previous shift workers to vacate workstations, retrieving personal items, checking cell phones).

In March 2009, SolarWorld's time and attendance system:

> included a feature by which 30 minutes were automatically deducted from hourly employees' working time for the required meal periods. Notwithstanding the automatic deduction, SolarWorld still required hourly employees to clock in and out using the time clocks, and managers regularly reviewed hourly employees' punch times to ensure that they were taking their full meal periods. SolarWorld changed its automatic-deduction policy in January 2012 after concluding that it was duplicative of the requirement that hourly employees clock out for their uninterrupted 30-minute meal period.

---

[2] It is unclear why SolarWorld apparently determined that employees who clock-in/out more than five minutes before/after their scheduled shift did not engage in non-compensable personal activities.

Page 4 – FINDINGS AND RECOMMENDATION

Declaration of Robin Nelson in Multnomah County Case No. 1212-16562 (attached as Exhibit 5 to the Declaration of David Shuck (ECF 165-5)) at ¶ 12.

After 2012, in the event an employee took less than 30 minutes for a meal period and clocked back in (e.g., after 28 minutes), SolarWorld only paid for the time on the clock. Nonetheless, SolarWorld instructed employees the meal break was a 30-minute period. Deposition of Michael Makaneole (attached to the Declaration of Michael W. Kopp as exhibit A (ECF 174-1) at p. 165-66 (Supervisors informed employees that they were entitled a to a 30-minute break). There is no evidence in the record that SolarWorld reprimanded, terminated, or took affirmative action to stop employees from clocking back in early from a meal break during the relevant period.

## DISCUSSION

A.      Compensable "Work Time"

Plaintiff asserts claims on behalf of the class pursuant to Or. Rev. Stat. §§ 652.120 (failure to pay regular wages); 653.055 and 653.261 (failure to pay overtime wages); and 652.140 (failure to pay wages upon termination). Plaintiffs assert that SolarWorld's five-minute rule failed to account for all work time. In addition, plaintiffs assert SolarWorld failed to pay for all time during meal breaks in which an employee took less than 30 minutes.[3]

1.      5-Minute Rule

Every employer must keep records of the actual hours worked. Or. Rev. Stat. § 653.045(1)(b). "Work time" includes both time worked **and time of authorized attendance** Or. Rev. Stat. § 653.010(11) (emphasis added).

---

[3] To prevail on an unpaid wages claim, plaintiffs must prove they were employed by SolarWorld and performed work for which they were not compensated. Hurst v. First Student, Inc., 2015 WL 6437196, at *2 (D. Or. Oct. 22, 2015).

Page 5 – FINDINGS AND RECOMMENDATION

SolarWorld relies heavily on federal law under the Fair Labor Standards Act (FLSA) and the Portal-to Portal Act to argue that questions of fact exist as to whether plaintiffs' activities during the five-minutes prior to and after a scheduled shift constitute "work."  Much of Oregon's wage and hour provisions are patterned after the FLSA so that federal case law is instructive in interpreting Oregon's law.  See Nw. Advancement, Inc. v. State, Bureau of Lab., Wage & Hour Div., 96 Or. App. 133, 136–37, 772 P.2d 934, 937 (1989) (federal regulations and case law interpreting the same terms under the Fair Labor Standards Act, after which most of ORS chapter 653 is patterned, are instructive).  However, Oregon law's definition of work is more expansive as it includes the time of authorized attendance as well as the time worked.[4]  Thus, the Portal-to-Portal Act's exclusion from compensable time activities which are preliminary to or postliminary to the principal activity for which an employee is hired to perform does not apply to exclude time in attendance at work under Oregon law.  See 29 U.S.C. § 254 (activities not compensable).  As this Court has previously noted regarding the definition of "work":

> (1) this definition [of work] was offered by the Supreme Court [in Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590 (1944)], prior to the passage of the Portal to Portal Act, which significantly narrowed the applicable definition of the word "work" under the FLSA; (2) the relevant Oregon statutory framework is itself derived from the FLSA as enacted prior to modification by Portal to Portal Act. Dinicola v. State, Dept. of Revenue, 246 Or. App. 526, 533, 268 P.3d 632 (2011); (3) Oregon has no statutory equivalent of the Portal-to-Portal Act; and (4) the Oregon Court of Appeals referred to and emphasized this definition in 1985, well after the FLSA was modified by the Portal to Portal Act.

Margulies v. Tri-Cty. Metro. Transp. Dist. of Oregon, 2015 WL 4066654, at *7 (D. Or. July 2, 2015).

---

[4] Indeed, Oregon specifically dictates preference for a more advantageous interpretation of rules where employers are required to comply with both federal and state laws:
> Employers who are required to comply with the state and federal laws, regulations, and rules … are required to comply with all standards set by those laws, regulations, and rules. When one set of standards differs from the other, the standards most advantageous to employees must be met.

Or. Admin. R. 839-020-0115(3).

Under Oregon law, "Hours worked" means all hours for which an employee is employed by and required to give to the employer and includes all time during which an employee is necessarily required to be on the employer's premises, on duty, or at a prescribed workplace and all time the employee is suffered or permitted to work.  Or. Admin. R. 839-020-0004(19). Employees are not required to be working in the colloquial sense the entire time that they are "working" for purposes of wage and hour laws.  The fact that a 10–minute rest break is too short to enable an employee to use the time effectively for his or her own purposes suggests that the employee is "working" for purposes of the wage and hour laws.  Gafur v. Legacy Good Samaritan Hosp. & Med. Ctr., 344 Or. 525, 534-35, 185 P.3d 446, 451-52 (2008).  With respect to preparatory and concluding activities:

> Where a contract, custom or practice dictates certain activities to be considered as work time, even though not considered to be an integral and indispensable part of a principal activity, the time devoted to such activities will be considered as work time.

Or. Admin. R. 839-020-0043(3).  At the certification stage, this Court already noted:

> It is apparent under the plain language of SolarWorld's 5-minute rule that minutes deducted from employee's records of time worked constitute time of authorized attendance (the SolarWorld employee handbook expressly instructed hourly employees to report to work no more than five minutes prior to their scheduled start time and not to stay more than five minutes past their scheduled stop time without. Express prior authorization, and SolarWorld posted a poster over each of its time clocks so advising its hourly employees …. [T]he 5-minute rule operated to deduct minutes from hourly employee time records only to the extent such employees permissibly clocked in 1-5 minutes prior to the scheduled beginning of their shifts.

Findings and Recommendation (ECF 198) at p. 14, Adopted (ECF 210).

Here, the undisputed evidence demonstrates that SolarWorld had a custom and practice of authorizing employee attendance up to five minutes before and five minutes after a scheduled shift. The employee handbook directed employees to "accurately record the time they begin and end their work [and] … record the beginning and ending time of any split shift or departure from work

Page 7 – FINDINGS AND RECOMMENDATION

for personal reasons." Exhibit 4 to the Declaration of David Shuck (ECF165-4)) at p. 7. Thus, regardless of whether the class members engaged in integral and indispensable tasks of the principal activities,[5] during the time in which they clock in/out less than five minutes prior to or after their scheduled shifts, such time on the clock is authorized attendance and properly included in the definition of compensable work under Oregon law.

To the extent SolarWorld relies on its assertion that it does not require class members to work during the five-minute periods and presents evidence that some employees engaged in personal activities during this time,[6] it also did not forbid work. "It is the duty of the employer to exercise control and see that the work is not performed if it does not want the work to be performed." Or. Admin. R. 839-020-0040(4). Moreover, as noted above, SolarWorld authorized attendance during the five-minute periods at any rate. Accordingly, the Court should grant summary judgment in favor of the class on the issue of the 5-Minute Rule and find that SolarWorld is liable for wages as "work time" for time on the clock during the five-minute periods covered under the 5-Minute Rule in the amount of $21,485.97 for regular time and $115,254.11 for unpaid

---

[5] See Steiner v. Mitchell, 350 U.S. 247-252-53 (1956) (determining time under the Portal-to-Portal Act is not excluded if it involves engaging in "integral and indispensable part of principal activities."). See also, Or. Admin. R. 839-020-0043(1) (Preparatory and concluding activities are considered hours worked if the activities performed by the employee are an integral and indispensable part of a principal activity for which the employee is employed.). As noted above, Oregon's rule regarding preparatory and concluding activities is modified in a way that the Portal-to-Portal Act does not by compensating for non-integral and dispensable work if it is a custom or practice to consider activity work time. Defendants cite a ruling in Bey v. SolarWorld, Case No. 1212-1652 (February 25, 2015) finding questions of fact regarding the 5-minute rule based on whether employees engaged in integral and indispensable part of a principal activity. See Exhibit 2 to the Declaration of David Schuck (ECF 165-2). However, the opinion does not appear to consider Or. Admin. R. 839-020-0043(3) in the reasoning.

[6] There is also evidence that employees engaged in essential work activities as well. See, e.g., Deposition of Christopher Cashman (attached to the Declaration of Stephanie Brown as Exhibit 21 (ECF 180-11) at pp. 10-11 ("I mean you clock in five minutes early, went straight to the floor to pass-down. And then once that was over you started in to the machines."); Deposition of Loy Moore (attached to the Declaration of Stephanie Brown as Exhibit 23 (ECF 180-13) at p. 21 ("when I got to work and got in and clocked in, I went straight to my desk. And that was my routine … Opened the computer and checked the e-mails. Basically, started working.").

overtime wages.[7]

## 2. Meal Periods

As noted above, SolarWorld provided a 30-minute meal break, however during the period at issue, some class members clocked back into work after less than 30 minutes on occasion.

Every employer is required to provide a 30-minute meal break for each work period of not less than six hours and if the employee is not relieved of all duties for 30 continuous minutes during the meal period, the employer must pay the employee for the entire 30-minute period. Or. Admin. R. 839-020-0050. Plaintiffs rely on Maza v. Waterford Operations LLC, 300 Or. App. 471 (2019) for the proposition that the employer must not merely offer the break but ensure that work is not performed during the period. However, prior to Maza, the courts did not interpret the rule as strictly.

Judge Anna Brown of this Court determined that Maza is not retroactively applicable to cases such as this:

> before Maza Oregon courts had not interpreted Oregon Administrative Rule 839-020-0050 to require an employer to pay an employee for a full 30-minute meal period when the employee did not take a full 30-minute meal period and the employer did not require the employee to return early from his meal period. As noted, the court held in Maza that the language of 839-020-0050 "means that a 30-minute meal [period] is mandatory and, if not taken, the employer must pay the employee's wages for the full 30-minutes" regardless of the reason the employee did not take the full meal period. This Court agrees with Defendant that the Maza court's interpretation of Oregon Administrative Rule 839-020-0050 is a substantive change in employers' duties and obligations as to meal periods. The Court, therefore, declines to apply the Maza court's holding retroactively because "doing so [would] ..., create new obligations or impose additional duties with respect to [Defendant's] past acts." Tucker, 90 Or. App. at 509. Thus, the Court concludes the individualized inquiry related to Plaintiffs' unpaid break claims exceeds the common class questions, and, therefore, resolution of the unpaid break claims is not amenable to efficient class-wide resolution.

---

[7] Plaintiff's expert calculated the damages based on time punch data. See Expert Report of Jennifer Murphy (ECF 315) at p. 5 and Schedule 1 at p. 17 (docket page number 67 of 135). The amount above does not include prejudgment interest.

Page 9 – FINDINGS AND RECOMMENDATION

Gessele v. Jack in the Box, Inc., 2020 WL 9814402, at *12 (D. Or. June 5, 2020).

Maza does not concern a new regulation, instead it interprets an existing regulation. The Oregon Supreme Court has indicated that when the Oregon Courts announce a new interpretation of a statute, that interpretation should apply both prospective and retroactively:

> Plaintiffs finally argue that, if we conclude that ORS 20.080(2) does not impose a prelitigation demand-letter requirement, we should apply that interpretation only prospectively. Citing Schlimgen v. May Trucking Co., 335 Or. 143, 152, 61 P.3d 923 (2003), and Peterson v. Temple, 323 Or. 322, 332, 918 P.2d 413 (1996), they argue that their reliance on Bennett throughout the litigation of this case justifies the exercise of this court's discretion not to apply the statute to them.
> The cases on which plaintiffs rely, however, pertain to this court's decision whether to give only prospective effect to a rule of its own making. None concerns whether this court has discretion to give such limited effect to its interpretation of a legislative enactment. [footnote omitted] We are not persuaded that we have, or should exercise, discretion to apply our decision in this case prospectively only.

Halperin v. Pitts, 352 Or. 482, 497, 287 P.3d 1069, 1077 (2012). Indeed, Halperin noted that the exercise of judicial discretion to apply interpretations of statutes only prospectively may raise significant constitutional issues concerning justiciability, equal treatment, and separation of powers. Id at 497, n.4, 287 P.3d at 1077, n.4. Nonetheless, prohibition on retroactive application of a new court statutory interpretation is not set in stone:

> We find no express Oregon holding that a lower court or tribunal has or does not have authority to decide whether a higher court's opinions are to be applied retroactively or prospectively. However, the question has been implicitly answered by opinions of the Oregon Supreme Court in which it has decided whether United States Supreme Court decisions should apply retroactively. See State v. Evans, 258 Or. 437, 483 P.2d 1300 (1971). We see no reason why the question of retroactive operation should not come within the general principle that lower courts or tribunals have authority to decide all questions of law that higher courts have not decided. The principal consideration that has motivated courts to make "overruling" decisions nonretroactive is the prevention of "detriment [to] litigants who have justifiably relied on the overruled precedent."

U.S. Nat. Bank v. Wagoner, 71 Or. App. 266, 269–70, 692 P.2d 149, 151 (1984).

Plaintiff argues Maza itself was retroactively applied to the defendant in that case.

Page 10 – FINDINGS AND RECOMMENDATION

However, Maza did not directly address the propriety of retroactive application of the new interpretation of the regulations. I agree with Judge Brown that making Maza retroactive would have a detrimental effect on employers like SolarWorld who have justifiably relied on prior regulatory interpretations. There exist issues of fact as to whether SolarWorld complied with the pre-Maza case law. Accordingly, the Court should deny plaintiffs' motion for summary judgment as to liability against SolarWorld for short meal periods.

B.    Willfulness

Plaintiffs' claims for unpaid final wages under Or. Rev. Stat. § 652.140 and for unpaid overtime under Or. Rev. Stat. 653.055 authorize a penalty under Or. Rev. Stat. 652.150 if the violation was willful. Because plaintiffs' motion for summary judgment as to liability for unpaid wages resulting from the 5-Minute Rule should be granted, the Court must determine whether this violation was willful.

An employer acts willfully if, having the financial ability to pay wages which he knows he owes, fails to pay them. Gessele v. Jack in the Box, Inc., 427 F. Supp. 3d 1276, 1305 (D. Or. 2019). The statute was not intended to impose liability where the employer's refusal to pay wages is based upon a bona fide belief that it is not obligated to pay them. Id. An employer does not act willfully, if it has a good faith belief that one of the elements necessary to trigger the obligation to pay wages owed at termination is lacking. Id.

A good faith belief cannot be based on ignorance of the law. See id. at 1306 (a defendant generally must know the facts that make his conduct fit the definition of the offense even if he does not know that those facts give rise to an offense).

Here, the interplay between state and federal law has added some confusion to the issue regarding preliminary and postliminary activities. In addition, there is evidence that SolarWorld

Page 11 – FINDINGS AND RECOMMENDATION

believed in good faith that its employees engaged in purely personal activities during the 5-Minute Rule time periods.  Nonetheless, the statute as determined above, requires payment of wages for time of authorized attendance which includes the time periods at issue.  SolarWorld does not rely on a good faith belief that plaintiffs were not authorized to show up for work and clock-in up to five minutes before their scheduled shift and cease work and clock-out up to five minutes after their scheduled shift.  Indeed, SolarWorld instructed plaintiffs to observe such time and attendance protocols.  SolarWorld also does not offer a good faith belief that plaintiffs were prohibited and prevented from engaging in anything but purely personal pursuits during this time.  SolarWorld instructed plaintiffs "to accurately record[] **time worked** … by punching in and out for **arrivals** ... and **departures** for work."  Employee Handbook (attached to the Declaration of Stephanie Brown as Exhibit 26 (ECF 180-16)) at p. 3.  Rather, SolarWorld asserts plaintiffs must show that SolarWorld knew that all class members engaged in integral and indispensable tasks that are part of the principal activity for which they are employed during the five-minute periods.  This is not a flawed interpretation of the facts upon which liability rests, it is a flawed interpretation of the law given that SolarWorld's own custom and practice dictated the clock-in/out time within five minutes of schedule and the employee handbook directed the time between punching in and punching out accurately record "time worked."

     Because SolarWorld is charged with knowledge of the statutes and regulations defining work time, it cannot assert a good faith belief that wages were not due for the time periods within the 5-Minute Rule.  Cf. Young v. State, 340 Or. 401, 410, 133 P.3d 915, 920 (2006) (once the legislature enacted the changes to former ORS 279.340(1) in 1995, the state could not assert a "bona fide belief" that it had no obligation to pay overtime to its white-collar employees). Accordingly, plaintiffs' motion for summary judgment on the issue of willful failure to pay wages

due for time worked within the 5-Minute Rule should be granted. However, plaintiff's expert appears to have calculated penalty wages based on both unpaid time punch wages and short meal break wages. See Expert Report of Jennifer Murphy (ECF 315) at pp. 5, 8-10 (calculating penalty wages separately for regular and overtime hours, but together for time punch adjustments and short meal periods and includes prejudgment interest). As such, the record is not clear as to the amount of penalty damages related to the time punch violations only.

In addition, defendant SunPower objects to the calculations because the expert was instructed that where any given employee is eligible for penalty damages under both Or. Rev. Stat. sections 652 and 653, to always select the section 652 penalty even when it resulted in a lower recovery for a particular class member. SunPower asserts it is prejudiced because the Court has already determined that plaintiffs may not bring section 653 claims against it. However, class counsel must fairly and adequately represent the interests of the class and has determined that it is unlikely that SolarWorld will be able to pay all damages. Thus, by electing the penalty damages under section 652 where available, class counsel determined class members have a better chance to collect despite a lower damage amount in some cases due to the differences in which prejudgment interest is calculated under the statutes. This does not create a genuine issue of fact regarding the amount of penalty damages per se. Counsel made a strategic choice to forgo potentially greater prejudgment interest in favor of increasing the odds that damages would be paid at all. However, the calculation has not yet been made and accepted by the Court for purposes of this motion. The Court does have a duty to protect absent class members. Because the issue of successor liability has not been made and the Court has not been provided with the full basis for counsel's determination that SolarWorld is unable to pay any damages, the issue of penalty wages should be deferred until a determination on successor liability can be made.

CONCLUSION

Plaintiffs' motion for partial summary judgment (ECF 334) should be granted in part and denied in part. The Court should grant summary judgment in favor of the class and against SolarWorld on the issue of the 5-Minute Rule and find that SolarWorld is liable for wages during the time periods covered by the Rule in the amount of $21,485.97 for regular time and $115,254.11 for overtime. The Court should also grant summary judgment in favor of the class and against SolarWorld on the issue of willfulness and find that SolarWorld willfully violated the wage and hour laws in failing to pay for time on the clock during the 5-Minute Rule time periods. The Court should deny plaintiffs' summary judgment motion as to the issues of short meals breaks and penalty wages.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 21st day of October, 2021.

    /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge